Argued October 15, modified November 12, 1919.

## SMITH *v*. MARTIN.*

(185 Pac. 236.)

**Vendor and Purchaser—Assignment of "Contract"—Clause Prohibiting.**

1. The parties to a contract for the sale of land could provide that it should not be assigned without the written consent of the vendor; a "contract" being an agreement between two or more parties, competent to contract, on a sufficient consideration, to do or not to do a particular thing which lawfully may be done or omitted.

**Vendor and Purchaser—"Waiver" of Provision Against Assignment —Proof by Parol—"Waiver" Defined.**

2. The vendor of land by contract stipulating against assignment without his written consent may waive, if he chooses, such provision of the contract for his benefit, and the "waiver," a voluntary relinquishment of one's known right by acts or by acceptance of benefits, may be proved by parol and circumstantial evidence as well as direct testimony.

*On validity and effect of stipulation in contract for sale of land against assignment by vendee without vendor's consent, see note in 35 L. R. A. (N. S.) 1064.                    REPORTER.

Pleading—Separate Defense Should be Complete in Itself.

3. The new matter in defendant's second defense should be sufficient in itself, independent of all other parts of the answer, to constitute a defense.

Pleading—Sufficiency of Separate Defense Referring to Other Defense for Matter of Inducement.

4. In ejectment by vendor of land against the assignee of the contract, second defense by defendant assignee, though referring to its first and separate answer, *held* sufficient; the reference being matter of inducement leading to the essential part of the defense grounded in waiver or estoppel.

Vendor and Purchaser—Pleading Waiver of or Estoppel to Enforce Stipulation Against Assignment Without Consent.

5. In a vendor's action of ejectment against the assignee of the contract, which stipulated against assignment without the vendor's written consent, second separate defense of the assignee, grounded in waiver of or estoppel to enforce the stipulation against assignment without written consent, *held* to state a good defense, either on the ground of waiver or estoppel, which merge into one another.

Estoppel—Vendor and Purchaser—Assignment of Contract—Waiver of or Estoppel to Require Vendor's Consent.

6. If the vendor of land, knowing that a company was about to purchase the contract from the vendee in ignorance of its requirement that the vendor's written consent be obtained, yet said nothing about the provision, and afterwards accepted the benefits of payments which the assignee company made, such vendor is prevented either on the ground of waiver or estoppel from subsequently insisting on the condition, at least without returning the payments.

Vendor and Purchaser—Assignment of Contract—Vendor not Entitled to Possession Against Assignee.

7. Where land was sold by contract stipulating against assignment without the vendor's written consent, the vendor cannot secure possession from an assignee of the contract without his consent on the ground that the waiver of the condition against assignment did not dispense with the stipulation of the contract against giving possession to an assignee without permission of the vendor, one of its conditions being that the purchaser was entitled to possession as long as he complied with the requirements as to payment, which right would pass by assignment of the contract.

Vendor and Purchaser—Assignment of Contract—Waiver of Written Consent to Assignment.

8. Evidence *held* to show waiver by the vendor of land in favor of the assignee of the contract of its provision requiring the written consent of the vendor to any assignment.

Specific Performance—Performance by Plaintiff—Necessity.

9. The court cannot decree specific performance by the seller of a contract for the sale of land, where the buyer's assignee, who asks relief, has not specifically performed and does not tender performance in full, but simply expresses its willingness.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

Claiming to be the owner and entitled to the possession thereof, the plaintiff instituted an action in ejectment against the defendant Martin to recover from him the possession of a certain lot described in the complaint. The Peninsula Security Company was substituted for and defended in place of Martin. Without denying the complaint in any respect, the company alleged, and it is admitted by the pleadings on behalf of the plaintiff, that the latter and his wife had contracted as parties of the first part to sell the property to G. D. Eatinger as party of the second part, for $1,700, the initial payment to be $100 and the remainder at the rate of not less than $20 per month, with interest on the unpaid portion of the purchase price at 6 per cent per annum. It was stipulated in the writing that the purchaser be entitled to have and retain possession of the property so long as he kept up the payments promptly, and as a condition of the contract it is provided that:

"He will not assign or transfer this contract, nor deliver the possession of said premises to any person or persons whomsoever without the consent in writing of the said first party."

The defeasance clause also states:

"Or in case the said party of the second part shall fail or refuse to comply with all or any of the conditions or agreements herein contained and by him to be performed, then and in such event this contract shall be void and thereupon said first party shall be entitled to the immediate possession of said premises."

All payments were to be forfeited in case of such default and considered as rent for the use of the property.

The answer further says that Eatinger took possession of the property and that since then he and his assigns have been in possession, have promptly met the payments specified and have kept and performed all of the conditions of the contract.   The defendant further alleges that Eatinger transferred and assigned to it all his right, title and interest in and to the contract; that it is now the owner and holder of the same, and that it is now in possession of the property and has leased it to the defendant. Martin.   The company further asserts that after the contract of sale was made, it was informed that there was an overdue mortgage on the premises, amounting to about $1,200, and that it is now able, ready and willing to make all the payments specified by the contract and to pay off the mortgage and pay the plaintiff such sum as may be found due him, upon his giving to the company a deed to the premises free of all encumbrances.

As a separate defense the answer alleges that prior to the assignment of the contract to it by Eatinger the company directed the attention of the plaintiff to the fact that there were two mortgages on the premises, one of $1,200 already mentioned, and another of about $100 due to the Northwestern National Bank of Portland; that therefore the company, instead of making payments direct to the plaintiff should make payments on the mortgages, and that this was agreed to by the plaintiff, in pursuance of which and with the consent of the plaintiff, the company purchased the contract from Eatinger and has paid to the mortgagees all installments specified in the contract.   The company claims not to have known anything about the provision of the contract requiring the consent of the plaintiff to its assignment; that the plaintiff, knowing of the defendant's ignorance on that subject and that it was

about to purchase the contract, permitted it to take over the agreement and make the payments to the mortgagees, and that it did purchase the contract in good faith, without knowledge of such provision against its assignment and relying on plaintiff's assent and agreement. It declares that it is able, ready and willing to pay to the plaintiff in cash such amount as may be found due under the terms of the contract after payment of the mortgages, on condition that he give to it a deed to the premises clear of all encumbrances, and an abstract showing fee-simple title in the plaintiff as specified in the contract, and that the company is able, ready and willing to perform the terms and conditions of the contract and make all payments required. Although the right to plead an equitable defense in an action at law was not questioned at any stage of this litigation, yet it may be of general interest to direct attention to Chapter 95, Laws of 1917, which sanctions such procedure.

The reply admits the making of the contract and that the company is leasing the property to the defendant Martin, and denies all other allegations of the answer except the corporate character of the answering defendant. The court heard the testimony on the issues thus formed and entered a decree in substance ordering the defendant company to pay to the plaintiff the sum of $273.82 upon the furnishing by him and his wife an abstract showing the premises to be free and clear of all encumbrances except the first mortgage of $1,200, and upon their executing a warranty deed to the company free from encumbrances except the mortgage and, further, that the action at law in the above-entitled cause for ejectment be perpetually enjoined. The plaintiff appeals.          Modified.

For appellant there was a brief over the names of *Mr. S. B. Huston* and *Mr. M. B. Meacham,* with an oral argument by *Mr. Huston.*

For respondent there was a brief over the names of *Mr. Omar C. Spencer* and *Mr. Perry C. Stroud,* with an oral argument by *Mr. Spencer.*

BURNETT, J.—1. A contract may be defined to be an agreement between two or more parties competent to contract, upon a sufficient consideration, to do or not to do a particular thing which lawfully may be done or omitted. Hence the parties could provide that the contract should not be assigned without the written consent of one of them. There was nothing unlawful or contrary to public policy in such a stipulation and under proper conditions the same may be enforced. There are instances where the personal qualities of one of the parties form an element of the agreement, as where the personal services of a physician or of an actor, or a tenant for a certain share of crops as rent, are involved. There, by operation of law the contract is not assignable without the consent of the employer. It is equally permissible for the parties to append the same condition by express contract, so that the inhibition against assignment arises from their covenant, rather than by operation of law. For instance, in *Behrens* v. *Cloudy,* 50 Wash. 400 (97 Pac. 450), a lease contained covenants of the lessor to sell the land to the lessee in eight months at the latter's option, and also the covenant of the lessee not to assign any part of the lease. The plaintiff had taken an assignment of the option without a written consent as required by the contract, and sued to compel specific performance. The court held that the covenant

against the assignment was lawful and that the purchaser without written consent acquired no rights. In another Washington case, *Bonds-Foster Lumber Co.* v. *Northern Pacific R. R. Co.,* 53 Wash. 302 (101 Pac. 877), it is laid down as a rule that:

"One who accepts assignment of a contract which by express terms is made nonassignable, acquires only a cause of action against the assignor."

See, also, *Burck* v. *Taylor,* 152 U. S. 634 (38 L. Ed. 578, 14 Sup. Ct. Rep. 696, see, also, Rose's U. S. Notes); *Tabler* v. *Sheffield Land Co.,* 79 Ala. 377 (58 Am. Rep. 593); *Deffenbaugh* v. *Foster,* 40 Ind. 382; *Andrew* v. *Meyerdirck,* 87 Md. 511 (40 Atl. 173); *City of Omaha* v. *Standard Oil Co.,* 55 Neb. 337 (75 N. W. 859); *Zetterlund* v. *Texas L. & C. Co.,* 55 Neb. 355 (75 N. W. 860).

2. In such contracts as the one we have before us, the provision against assignment without the consent of the seller is made for his benefit and, like all other provisions in favor of a party, he may waive it if he chooses. Such waiver may be proved by parol and by circumstantial evidence, as well as by direct testimony. In *Schmurr* v. *State Ins. Co.,* 30 Or. 29 (46 Pac. 363), a policy of insurance required that all waivers of its provisions should be in writing, but the court held that even this condition could itself be waived, and said in substance that where a company has full knowledge of facts that render void one of its policies, retains the premium and fails to cancel the policy, it waives the forfeiture, and this can be done by conduct or by parol, although the policy itself provides that it shall be in writing. "Waiver" is a voluntary relinquishment of one's known right, and may be by the acts of the party or by accepting benefits accru-

ing on account of that waiver: *Maday* v. *Roth,* 160 Mich. 289 (125 N. W. 13, 136 Am. St. Rep. 441) ; *Peters* v. *Canfield,* 74 Mich. 498 (42 N. W. 125) ; *Francis* v. *Litchfield,* 82 Iowa, 726 (47 N. W. 998) ; *Ross* v. *Page,* 11 N. D. 458 (92 N. W. 822).

3–5. The plaintiff contends, however, that the second further and separate defense interposed by the Security Company taken alone without reference to the first defense is unintelligible and furnished no ground of resistance to the plaintiff's complaint.  He argues that the new matter in the second defense should be sufficient in itself, independent of all other parts of the pleading, to constitute a defense.   In principle this is true, but, as stated in *Casner* v. *Hoskins,* 64 Or. 254 (128 Pac. 841, 130 Pac. 55) :

"The general rule is that a separate defense should be complete within itself and contain all the averments necessary to answer the entire cause of action set forth in the complaint or such part thereof as is intended to be controverted: *Gardner* v. *McWilliams,* 42 Or. 14 (69 Pac. 915) ; *Moore* v. *Halliday,* 43 Or. 243 (72 Pac. 801, 99 Am. St. Rep. 724).   In the construction of pleadings as in the interpreting of other writings, the maxim, 'That is certain which can be rendered certain,' applies, and where one part of an answer, for the purpose of avoiding reiteration of facts alike applicable to the other parts of the defense, refers to such part where the matter to which attention is thus attracted is sufficiently set forth, the allusion is a compliance with the requirements of the statute that the language employed in an answer shall be concise and without repetition: 1 Ency. Pl. & Pr. 853; *Sutherland* v. *Phelps,* 22 Ill. 91."

The defense in question reads thus in part:

"That subsequent to the making of the contract of sale, set forth in paragraph II of the defendant's first and separate answer, and prior to the assignment of

the said contract, which was made by said Eatinger on
July 14, 1917, to the Peninsula Security Company, and
is set forth in paragraph IV of the defendant's first
and separate answer, the defendant, Peninsula Secur-
ity Company, called the plaintiff's attention, on July
12, 1917, to the fact that there was both a first and
second mortgage on said premises. * * ''

This is matter of inducement leading to the essential
part of the second defense, which is grounded in waiver
or estoppel, and under the authority of *Casner* v.
*Hoskins,* 64 Or. 254 (128 Pac. 841, 130 Pac. 55), was
sufficiently pleaded. The further contention of the
plaintiff is that waiver was not alleged and that the
statement in the defense under consideration did not
amount to an estoppel. It is true that the word
"waiver" is not mentioned in the answer, but it is
stated therein:

"That the said plaintiff is estopped from now as-
serting this provision of the contract of sale against
assignment without consent in writing, in this: that
pursuant to said plaintiff's consent and agreement, the
defendant Peninsula Security Company, not knowing
that consent to the assignment should be first obtained
in writing and relying on plaintiff's consent and agree-
ment, purchased said contract and has made all pay-
ments specified by the contract of sale to the mort-
gagees and the said Peninsula Security Company,
relying on said consent and agreement of the plaintiff,
has kept and performed all other terms and conditions
of said contract of sale; that it would now prejudice
the defendant, Peninsula Security Company's inter-
ests to permit the plaintiff now to assert the clause in
the contract of sale against the assignment unless
plaintiff's consent was first obtained in writing.''

It is not the name given to the matter averred, but
the legal effect to be drawn from the facts stated,
which gives force to the pleading. The pleader may

put a wrong label upon his statement of his cause of action or defense, yet the court will consider the pleading according to its legal effect without reference to the title it bears. It is sometimes difficult to distinguish between estoppel and waiver. The waiver of the terms of a contract may be made the subject of a still further contract between the parties, and in that case as in any other agreement there must be a consideration and subject matter, and the assent of both contracting parties. But, as already shown, the waiver may result from the conduct of the party for whose benefit the stipulation said to have been waived was made in the first instance. The distinction is thus pointed out by Mr. Justice McBRIDE in *Mitchell* v. *Hughes,* 80 Or. 574 (157 Pac. 965):

"Where there is no intention to waive, there is no waiver, unless the conduct of the alleged waiver is such as to have misled the waivee to his prejudice. 'Waiver involves both knowledge and intention; an estoppel may arise when there is no intention to mislead. Waiver depends upon what one himself intends to do; estoppel depends upon what he caused his adversary to do.'"

And it is said in 40 Cyc. 261:

"The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby."

The principle is thus stated by Judge SANBORN in *Rice* v. *Fidelity & Deposit Co.,* 103 Fed. 427, 435 (43 C. C. A. 270, 278):

"But a waiver is either the result of an intentional relinquishment of a known right, or an estoppel from enforcing it. To constitute a waiver there must be an intention to relinquish the right, or there must be words or acts calculated to induce the other contracting party to believe and which deceive him into the belief that the holder of the right has abandoned it; and the party deceived must have acted on his belief, so that an assertion of the right will inflict upon him a loss he would not have sustained if its holder had not appeared to relinquish it."

These excerpts support the doctrine that waiver or estoppel does not necessarily depend upon the affirmative intention of the waivor, but that in the alternative it may be grounded upon his conduct which misleads the other party into doing something which will inure to his own hurt if the waivor is allowed to repudiate the transaction. Thus it seems that waiver and estoppel largely occupy common ground or shade into each other.

6. It is urged also by the plaintiff that a contract required by the statute of frauds to be in writing cannot be waived verbally, as this would be substituting an oral contract for what the law says must be written. This is correct if we contemplate waiver as grounded solely in contract and the doctrine is supported by 29 Am. & Eng. Ency. Law (2 ed.), 1101; but the text-writer there goes on to state:

"This is true even though the agreement or waiver may be in such terms that, taken alone, it would not be required to be in writing. The only ground upon which a party will be bound by such a waiver is that the other party has so governed his conduct by virtue of and relying upon the attempted waiver or alteration that it would be aiding a fraud to permit him to deny its validity."

Hence it is that if in fact the plaintiff, knowing that the company was about to purchase the contract in ignorance of the requirement that his written consent should be obtained, yet said nothing about that provision and afterwards accepted the benefits of the payments which the company made, it would prevent him from now insisting upon that condition, at least without returning the payments of which he enjoyed the benefit. It matters not whether we call it estoppel or waiver, the result is the same.

7. Again, the plaintiff makes the point that the waiver by the lessor of a condition in the lease against assignment without his written consent does not dispense with other conditions therein, meaning thereby that it does not override the stipulation against giving possession without such permission. We must, however, keep in view all the conditions of the contract, one of which was, as is seen expressed therein, that the purchaser was entitled to take and retain possession of the property as long as he complied with the requirements as to payment. This was a right given to the purchaser under the contract and would pass by the assignment of it. It is true that if the purchaser himself had kept up the payments and had given possession to another without assignment, this would have constituted a breach of the contract unless the plaintiff consented to it in writing or waived the same. On the other hand, an assignment of the contract would carry with it the right of possession, it being a case of the greater including the less, because the contract gives to the holder of it the right to possession.

8. Having in mind the principle that a stipulation against the assignability of a contract is lawful and enforceable, but that it may be waived by the party for whose benefit it was made, we direct attention to

the testimony on the subject. Mr. Drinker, the president of the company, stated that Mr. Eatinger, the original contractor for the purchase of the property, opened negotiations with him, exhibited to him a copy of the contract and sought to have him take it over and assume its obligations; that he arranged for an interview with the plaintiff at the Northwestern National Bank, at which he told the plaintiff of Eatinger's request for the defendant company to take over his equity in the contract; that he had searched the records and found there were two overdue mortgages on the premises and that if the company took over the contracts it would not make the payments to him but would have to make them to the mortgagees until the encumbrances were paid off. He says that he offered to buy Smith's interest in the contract, but the latter declined to sell. He then continues:

"Mr. Smith then said he would not discount the contract, but that he would allow us to make payments to the mortgagees, with the understanding that the second mortgage to the Merchants' National Bank was to be paid off first; and then we were to start making payments on the first mortgage."

Drinker also testified to having made certain payments on both mortgages. Another witness, Mr. Holbrook, an officer connected with the bank, narrates having arranged for the interview between Drinker and Smith, at which Smith declined to sell his interest in the property, and that Drinker then said:

"He would go ahead and pay out in accordance with the terms of his contract, and, in order to make certain that the payments would go direct to the mortgagees, he would pay them direct, and he then paid me $20, which was the amount then due us on our mortgage, and I gave him a receipt for it.

"Q. Was that with the consent and agreement of Mr. Smith?

"A. It certainly was. He was right there, and consented to it, as far as I could see."

He declares that there was nothing said at that time about the requirement that an assignment should be in writing, and no objection was raised to the receipt of the money by him.

The plaintiff himself, speaking of the meeting at the bank, after relating that he declined to sell his equity in the property, testified about the conversation as follows:

"He [referring to Drinker] stated something to the effect that if I did not accept the discount on my equity, that they should continue the payments to the mortgagee, in protection to their interests in the contract, at which I answered I had no option; that is, I couldn't help myself.

"Q. Was there any agreement between you and Mr. Drinker at that time that this contract should be modified in any respect?

"A. Nothing whatever was said about modifying the contract."

It further appears from the testimony that after the defendant company had made some payments on the small mortgage, Smith paid the balance remaining due, receiving the benefit of the payments made by the company. He also admits that the sums paid on the larger mortgage were credited on the interest due thereon. The company took the assignment of the contract from Eatinger on the same day of the conversation at the bank.

It is very plain from this testimony that the company did not make the payments as a mere volunteer. While it cannot be excused for not reading the contract carefully, although Drinker says he looked it over hastily,

94 Or.—10

the conduct of Smith, even as narrated by himself, naturally leads to the conclusion that he did not intend to insist upon the enforcement of the condition requiring his written assent to an assignment of the contract. One would readily infer this from his statement that he had no option, and would be led to believe that he assented, albeit unwillingly, to the payments being made by the defendant to protect its interest in the contract. Moreover, he accepted the benefits of the unauthorized assignment, by receiving the credit for the payments made on the mortgages by the defendant company. As we view the testimony, the waiver of this condition on behalf of Smith is established and the company occupies the position of Eatinger, the original party to the contract.

9. The situation, then, is that the plaintiff has brought ejectment to recover possession of the property. He placed the other party to the contract in possession of the realty. Until there is a default in the performance of the covenants of the purchaser, his possession cannot be disturbed. Moreover, as the condition about the nonassignability of the contract was waived, its violation does not amount to a default. Hence the company, by its tenant, is in rightful possession as successor of Eatinger, which is sufficient to defeat the action of ejectment. On the other hand, the defendant does not tender performance in full. Neither has it entirely performed the covenants. Indeed, no tender is pleaded. It simply expresses its willingness to proceed. Under these circumstances, the court cannot decree specific performance by the seller, because the buyer has not specifically performed on its part. The decree will therefore be modified to the effect that the further prosecution of the instant particular action at law in ejectment shall be enjoined,

without prejudice to any new cause of action which may arise in favor of the plaintiff, respecting the realty in question, and without granting further relief to the defendants.   Neither party shall recover costs from the other.     MODIFIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.