**Bhagnanji D. PATEL and Jyotiben B. Patel, his wife, Appellants,**

v.

**James B. GANNAWAY, Appellee.**

**No. 83–1143.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1983.

Decided Jan. 18, 1984.

James M. Moody, Little Rock, Ark., for appellee.

Samuel A. Perroni, Perroni & Rauls, P.A., Little Rock, Ark., for appellants.

Before HEANEY, ROSS and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Bhagnanji D. and Jyotiben B. Patel's attempted purchase of a leasehold interest in a Lonoke, Arkansas motel resulted in the loss of their $40,000.00 down payment. Their loss occurred when the local bank foreclosed on the property because the seller, Billy Ray Canterberry, defaulted on a series of promissory notes. Bhagnanji Patel had deposited an unendorsed check for $25,729.54, representing part of the $40,000.00 down payment, with appellee James B. Gannaway. The Patels claim that Gannaway's acceptance of the check and other circumstances of their dealings created in Gannaway a fiduciary duty as an escrow agent to prevent their loss. The district

court[1] held that no escrow arrangement was created, that no fiduciary duty arose, and that Gannaway's actions were not the proximate cause of the Patels' loss. We affirm the judgment of the district court.

We cite the following facts as found by the district court. The Patels do not claim that these findings are clearly erroneous. *See* Fed.R.Civ.P. 52(a).

Appellant Bhagnanji Patel began negotiations with Billy Ray Canterberry to purchase the Southern Manor Motel in Lonoke, Arkansas. Patel and Canterberry executed a written Offer and Acceptance prepared by the Little Rock Abstract Company. This document made specific reference to Canterberry's indebtedness to the First State Bank of Lonoke, and the bank's security interest in the motel was a matter of record.[2] As required by the agreement, Patel deposited a check for $25,729.54 with the Abstract Company. This amount was to be applied to the $40,000.00 down payment due at closing.

The Abstract Company was subsequently dismissed as the closing agent. Canterberry then retained James B. Gannaway, an attorney, to represent him in the sale. On October 11, 1979, Patel, Canterberry and Gannaway met in Gannaway's office. Two documents were executed. The first incorporated by reference the terms of the Abstract Company's Offer and Acceptance, with the single revision that Patel was to deposit "the sum of $25,729.54 in escrow with James B. Gannaway ...." The second incorporated and modified certain terms in the Offer and Acceptance, and again stated that a check for $25,729.54 would be "deposited in escrow with James B. Gannaway ...." Later that same day, Patel recovered from the Abstract Company his $25,729.54 in the form of a check from the Abstract Company payable to him. Patel then returned to Gannaway's office and delivered to him the unendorsed check. In return, Patel received a handwritten receipt from Gannaway stating that

I have received this date an unindorsed check from Little Rock Abstract Company to Bhagnanji D. Patel in the amount of $25,729.54, being check No. 2622, to be held by me in escrow to be delivered to Billy R. Canterberry at time of closing of sale of Southern Manor Motel and Restaurant, Lonoke, Arkansas.

/s/ James B. Gannaway
James B. Gannaway

Approximately one month later, Patel hired attorney Richard Berry. Berry reviewed the documents prepared by Gannaway and redrafted an agreement which was signed by Patel and Canterberry at the November 20, 1979 closing. This document made the following provision for the $25,-729.54 check held by Gannaway:

(A) BUYERS will pay SELLERS the sum of $40,000.00 upon closing, and may include as a part of this down payment a check in the amount of $25,729.54 presently held in escrow by SELLERS' attorneys. Such check will be endorsed by BUYERS at the time of closing.

The agreement also required Canterberry to provide title insurance.

At the closing, Gannaway represented Canterberry and Berry represented Patel. Berry informed Patel that Canterberry's proffered commitment for title insurance was inadequate, but Patel indicated his desire to proceed with the sale despite this shortcoming. Following the execution of the documents, Gannaway delivered the $25,729.54 check to Berry and Patel for endorsement. Patel later delivered a second check for $14,270.46, representing the balance of the $40,000.00 down payment, directly to Canterberry. Within six months of the closing, the bank had commenced foreclosure proceedings against the property. A decree of foreclosure was issued on May 22, 1980.

The Patels claim that these events, the use of the term "escrow" in the documents prepared by Gannaway, and other representations established Gannaway, as a matter

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

2. *See* footnote 3, *infra.*

of law, as an escrow agent. Accordingly, the Patels assert that he owed a fiduciary duty to them which he breached in delivering the funds to Canterberry. The district court concluded that Bhagnanji Patel's failure to endorse the $25,729.54 check at the time of delivery to Gannaway meant that Patel retained control over it. It thus held that no escrow arrangement existed because the check had not passed irrevocably to Gannaway. It further concluded that Gannaway's actions were not the proximate cause of the Patels' loss since they were fully apprised of the lack of title insurance and the extent of the bank's interest in the property.

■ Appellants correctly state that an escrow agent "becomes agent of both buyer and seller and this agency creates a fiduciary relationship." *Red Lobster Inns v. Lawyers Title Ins. Corp.,* 492 F.Supp. 933, 941 (E.D.Ark.1980), *modified,* 656 F.2d 381 (1981) (citing *Collins v. Heitman,* 225 Ark. 666, 284 S.W.2d 628 (1956)). However, preceding a determination of whether Gannaway's actions were a breach of a fiduciary duty, we need to address the threshold issue of whether an escrow relationship existed among the Patels, Gannaway, and Canterberry.

■ As held by the district court, it is clear that one requirement essential under Arkansas law to establish an escrow arrangement was not satisfied. This requirement is that

[t]o constitute an instrument an [sic] escrow it is absolutely necessary that the deposit of it should be irrevocable—"that is, that when the instrument is placed in the hands of the depositary it should be intended to pass beyond the control of the grantor for all time, and that he should actually lose the control of and dominion over the instrument—for in case the deposit is made in furtherance of a contract between the parties, the contract must be so complete that it remains only for the grantee or obligee, or another person, to perform the required condition, or for the event to happen, to have the instrument take effect according to its import."

*Masters v. Clark,* 89 Ark. 191, 193–94, 116 S.W. 186, 187 (1909) (quoting 16 Cyc. 568). *See Lindsey v. Hornady,* 215 Ark. 797, 223 S.W.2d 768 (1949); *Fine v. Lasater,* 110 Ark. 425, 161 S.W. 1147 (1913). In this case, the alleged escrow instrument was an unendorsed check. The district court found that the check was returned to Patel and Berry for endorsement at the November 20 closing. Consequently, delivery of the check to Gannaway on October 11 was not irrevocable. Something more was needed than simply for Canterberry "to perform the required condition, or for the event to happen" to have the check take effect. *Masters,* 89 Ark. at 193–94, 116 S.W. at 187. Despite the language used in the documents, the district court correctly concluded that an escrow relationship was not established.

■ The district court also concluded that even if Gannaway was found to be an escrow agent, his actions were not the proximate cause of the Patels' loss. This conclusion was based on its finding that Bhagnanji Patel willingly proceeded to close the deal knowing about the bank's liens on the property[3] and aware that the commitment for title insurance was inadequate.[4] Under Ar-

---

**3.** The district court made the following findings of fact:

　3. Billy Ray Canterberry owed a substantial sum of money to First State Bank of Lonoke on a series of promissory notes and the bank had a security interest in the motel evidenced by a financing statement which had been filed of record as of the time of the negotiations between Patel and Canterberry.

　4. After the initial negotiations between Patel and Canterberry in late September, 1979, they appeared at the office of Charles A. Walls and requested that he contact representatives of First State Bank with a proposal that the bank release its interest in the motel for a payment of $40,000. Charles Walls was the regular attorney for the bank which fact was known to Canterberry. Walls advised Patel and Canterberry that they should contact the bank regarding such a proposal.

**4.** The district court made the following finding of fact:

　15. On November 20, 1979, Berry met with Canterberry and Patel immediately before

kansas law, a principal's ability to recover damages from a negligent agent requires that the "loss sustained must be the direct and proximate cause of the negligence alleged." *Emerson v. Turner,* 95 Ark. 597, 604, 130 S.W. 538, 541 (1910). Given Bhagnanji Patel's awareness of the pitfalls of the transaction and his insistence that the deal be consummated, we cannot conclude that, even if Gannaway were an escrow agent, the lack of fulfillment of his fiduciary duty caused the Patels' loss. The district court did not err in this conclusion.

One further thought is in order. Gannaway was retained by Canterberry as his lawyer to represent him in this sale. Serving as escrow agent for Patel, who had conflicting interests with Canterberry, could have posed serious ethical problems for Gannaway. *See Model Code of Professional Responsibility,* EC 5–14, 16, & 19; DR 5–105(A) & (C) (1979);[5] *Attorney and Client: Conflict of Interest in Real Estate Closing Situations,* 68 A.L.R.3d 967 (1976). The record does not disclose to what extent Gannaway explained to Patel about the possibility of conflicting interests. Our holding that there was no escrow relationship, and thus no fiduciary duty, prevents a conclusion that Gannaway in a technical sense represented conflicting interests. The situation, however, was a pregnant one. We add these words with the hope that, in similar situations, lawyers will look closely to the applicable ethical considerations.

The judgment of the district court is affirmed.

proceeding to the closing and reviewed the agreement with the two individuals. At that time, the Commitment for Title Insurance was exhibited to Berry and he informed Patel in Canterberry's presence that the commitment would not satisfy the requirement for title insurance. Patel indicated his desire to

5. Arkansas has adopted the American Bar Association's Model Code of Professional Responsibility. *See* Ark.Stat.Ann. Title 27, Rules of Professional Conduct Rule I (1979).