1997 SD 98

Donald WANDLER, Plaintiff
and Appellee,

v.

Kenneth R. LEWIS, Bernice Slocum, Marilyn Woolard, and Terry C. Kranz, Defendants and Appellants.

No. 19698.

Supreme Court of South Dakota.

Considered on Briefs Feb. 20, 1997.

Decided July 23, 1997.

Dale R. Hansen, Sturgis, for Plaintiff and Appellee.

James S. Nelson and Paul S. Swedlund of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for Defendants and Appellants.

AMUNDSON, Justice.

[¶ 1] Donald Wandler (Wandler) initiated a declaratory judgment action seeking to have the trial court determine that the quitclaim deed involved in this case is void, the default provision in the contract for deed is void, and Wandler's interest in the property is superior to any other. After a trial, the court granted judgment in favor of Wandler, thereby allowing him a ten-day right of redemption. Kenneth R. Lewis, Bernice Slocum, and Marilyn Woolard (collectively referred to as Lewis) appeal. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2] On April 25, 1989, Lewis entered into a contract for deed with J.H. McLeod

(McLeod) to sell real property known as the Excelsior Placers Claim in Lawrence County, South Dakota.[1] McLeod agreed to pay Lewis $200,000, plus interest at ten-percent per annum. He paid $20,000 down and agreed to pay the balance in three equal installments of $73,381.60, commencing April 25, 1989, and payable on the same day of each year thereafter.

[¶ 3] The contract contains a provision prohibiting assignment without consent. Specifically, this provision states: "Buyer shall not have the right to assign or sell any interest in this Agreement, or any interest in the hereinbefore described property, without first receiving the express written permission of Seller, which consent shall not be unreasonably withheld."

[¶ 4] Another provision sets up an escrow account with the law firm of Richards & Richards as the escrow agent. This section provides:

Seller and Buyer hereby designate Richards & Richards, as Escrow Agent under this Agreement. Initial escrow charges shall be paid equally by Seller and Buyer. All subsequent escrow charges shall be borne solely by Seller. All documents pertaining to this Agreement shall be placed with said Escrow Agent. Such documents shall include:

(a) This Contract for Deed;

(b) The executed Warranty Deed;

(c) The property insurance policy;

(d) The abstract of title[;]

(e) Executed Quit Claim Deed from Buyer to Seller in case of a default.

The parties hereby instruct and authorize the Escrow Agent as follows:

(a) Upon full compliance of Buyer with all of the terms and conditions of this Agreement, the Escrow Agent shall deliver to the Buyer all of the foregoing listed items;

(b) Upon receipt of written instructions and proof by the Seller that:

1. Buyer has defaulted under this Agreement;

2. Seller has given Buyer notice of such default;

3. Buyer has not cured such default within the thirty (30) day default period; and

4. Seller has terminated and canceled this Agreement;

the Escrow Agent shall deliver to Seller all of the foregoing listed documents then held by the Escrow Agent. In the event the parties are not in Agreement on whether or not there has been a default, the Escrow Agent shall deliver the documents held in escrow to the Lawrence County Clerk of Courts.

[¶ 5] Another section provides instructions in the event of a default. It states:

In the event the Buyer defaults in the performance of any of the terms, covenants, conditions or obligations of this Agreement assumed herein, the parties agree that the Seller shall have the option to declare all deferred balances due and payable. Said option shall be exercisable by giving to the Buyer thirty (30) days' written notice setting forth the nature of such default. All notices of default shall be by certified mail[.]

. . .

If such default is cured within said thirty (30) day period, all provisions of this Contract shall remain in full force and effect. In the event of the failure of the Buyer to cure such default within said thirty (30) day period, then all deferred balances shall be due and payable at the end of the thirty (30) day period and Seller shall have the right to re-enter and take possession of the property, including all buildings, improvements, utilities, service lines and other such property as may be affixed to the realty and to retain all payments and improvements made on the premises by the Buyer as rent and liquidated damages for the breach of this Agreement, accurate damages being incapable or very difficult of accurate estimation at the time of execution of this Contract. That the parties hereto have made a reasonable endeavor to fix fair compensation to the Seller in the

---

1. Lewis acts on behalf of Slocum and Woolard by power of attorney.

event of default and that the preceding stipulation bears a reasonable relation to probable damage and is not disproportionate to any damages reasonably to be anticipated. The parties further agree that in the event of such default, all other remedies available to the Seller under the laws of this state shall accrue to the Seller. In the event of default by either party, the prevailing party shall be entitled to recover attorney fees and costs as provided for under SDCL 21–50. . . .

[¶ 6] On the same day McLeod entered into this contract, he assigned all of his rights and interest in the contract to Dakota Placers, Inc. (Dakota Placers). Dakota Placers then assigned its interest to Red Ex Associates, a joint venture consisting of Blattner Placer, Inc. and Dakota Placers. A document entitled "consent to assignment" demonstrates that Lewis consented to the assignment by McLeod to Red Ex Associates. (This document apparently intends to consent to both assignments.) On September 10, 1990, the joint venture was terminated, and Blattner Placer, Inc. assigned its interest to Dakota Placers. There is no evidence of written consent to this assignment.

[¶ 7] The first installment payment of $72,-381.60, plus ten-percent interest, was due by Dakota Placers on April 25, 1990. After a discussion, the parties agreed to postpone the payment because Dakota Placers was experiencing financial difficulties. The agreement was reduced to writing wherein Dakota Placers was to pay $20,000 in consideration for modification of the contract.

[¶ 8] When the next annual payment was due on April 25, 1991, Dakota Placers was again experiencing financial trouble. On April 24, 1991, the parties agreed to modify the contract, with Dakota Placers paying $36,190.80 by April 25, 1991, and another $36,190.80 by September 1, 1991. The first payment was made, but not the second. Therefore, Lewis, through his attorney Reed Richards (Richards), wrote a letter dated October 10, 1991, giving notice of default. After Dakota Placers received this letter on November 8, 1991, the parties again agreed that Lewis would accept $12,741.47 from Dakota Placers if made by February 7, 1992.

[¶ 9] On January 7, 1992, Lewis was again informed that Dakota Placers did not have the money to pay the installment of $72,-381.60, plus interest. Discussions ensued and Dakota Placers paid $27,603.80 on April 17, 1992, to complete the 1991 installment. They also agreed that the 1992 installment would be postponed until December of 1992, but it was later extended to January 1, 1993, which was then extended again. Dakota Placers became in default under the terms of the contract for deed and failed to make timely payments of principal and interest as required by the terms of the contract for deed as amended.

[¶ 10] On May 4, 1993, Richards, on behalf of Lewis, sent a written notice of default, giving Dakota Placers thirty days from the date of the letter to cure the default. Otherwise, Lewis would undertake "all rights and remedies open to him under the provisions of the Contract for Deed dated April 25, 1989." Lewis later had Richards write Joe Butler (Butler), the lawyer for Dakota Placers, extending the time to cure the default to June 9, 1993, and then to June 25, 1993. Butler wrote a letter to Richards confirming the extension date, and Richards responded with a similar confirmation letter.

[¶ 11] Meanwhile, on June 11, 1993, Lewis sold his interest in the contract to Terry Kranz (Kranz). The quitclaim deed was then delivered to Kranz by Richards, acting as the escrow agent. Richards, now representing Kranz, wrote Butler on June 24, 1993, and requested that he have Dakota Placers sign a quitclaim deed conveying any interest they had in the Excelsior Placers Claim to Lewis. On the same day, Butler telephoned Richards and informed him that Dakota Placers would not be making the payment on June 25, 1993. While Butler claims they agreed to extend the deadline, Richards maintains there was no such agreement. There was no writing to demonstrate an agreement.

[¶ 12] Butler also testified Richards failed to inform him that he represented Kranz rather than Lewis. In the aforementioned letter of June 24, 1993, Richards states, "my client would still be open to some sort of mining venture by your clients if they find

further funding." With no knowledge of the Lewis/Kranz sale, Butler claims he was justified in believing that Richard's client was still Lewis.

[¶ 13] On June 28, 1993, Richards delivered the escrowed quitclaim to Kranz, and Kranz recorded the deed. On July 1, Richards wrote Butler, informing him of the sale to Kranz, and that Kranz recorded the deed. On July 13, Butler sent a facsimile transmission to Richards informing his client was in the position to pay the remaining balance due under the terms of the contract. Later, on July 22, 1993, Butler wrote Richards, setting forth Butler's recollection of their June 24, 1993, phone conversation.

[¶ 14] Dakota Placers took no action until September of 1994 when it assigned its interest in the contract to Wandler without consent from the other parties. In January of 1995, Wandler initiated a declaratory judgment action. After a trial, the court entered judgment in favor of Wandler, which granted Wandler a ten-day right of redemption. Lewis appeals, raising the following issues:

I. Whether the trial court erred in extending the period for redemption based upon an alleged oral stipulation between counsel where counsel disagree as to the existence of the stipulation.

II. Whether the trial court erred in concluding that the default/liquidated damages provisions of the contract for deed are unenforceable penalty provisions.

III. Whether the trial court fashioned an inappropriate remedy in light of its finding that the default/damages provision is unenforceable by granting the vendee a right of redemption.

IV. Whether the trial court erred in finding that Wandler had standing to bring the claim where there was no consent to the assignment of the contract for deed.

V. Whether the trial court erred in its calculation of the redemption figure owing from Wandler to Lewis.

## DECISION

### [¶ 15] I. Oral Stipulation by Counsel.

[¶ 16] Lewis maintains the trial court erred in finding there was an agreement between Richards and Butler to extend the final deadline. Urging the application of SDCL 16–18–11,[2] he argues an attorney's power to bind a client by stipulation with opposing counsel is not enforceable where the stipulation has not been reduced to writing and the attorneys are in disagreement as to the existence or scope of the stipulation. As support for his argument, Lewis cites *Shann v. Rapid City*, 73 S.D. 517, 519, 44 N.W.2d 780, 780–81 (1950); *Carlton v. Saville*, 51 S.D. 282, 286, 213 N.W. 509, 511 (1927); *Bunday v. Smith*, 23 S.D. 308, 309, 121 N.W. 792, 793 (1909); *Gibson v. Allen*, 18 S.D. 417, 419, 100 N.W. 1096, 1097 (1904). These cases are distinguishable, however, as they involve procedural issues rather than factual issues. For example, *Shann* involves an alleged oral stipulation of counsel to extend an appeal deadline; *Carlton* pertains to an alleged oral stipulation for leave to file pleadings to intervene; *Bunday* entails an alleged oral stipulation for extension of time in which to file briefs; and *Gibson* concerns an alleged stipulation for amendment of the answer. Lewis fails to cite authority stating testimony cannot be received from attorneys regarding an agreement as to the extension of a deadline under a contract for deed. Clearly, this is a factual determination to be made by the trial court. The record discloses both attorneys testified without objection as to whether this agreement existed. SDCL 16–18–11 does not foreclose enforcement of such an agreement. In addition, Lewis should have raised an objection to the trial court when discussions arose pertaining to the agreement. The record reveals no such objection. As we have stated: "[I]ssues

2. SDCL 16–18–11 provides:

An attorney and counselor at law has power to bind his client to any agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court.

not addressed or ruled upon by the trial court will not be addressed by this Court for the first time on appeal." *Watertown v. Dakota, Minn. & E. R.R.*, 1996 SD 82, ¶ 26, 551 N.W.2d 571, 577.

[¶ 17] Therefore, we accept the following conclusion of the trial court: "Having weighed the credibility of the witnesses in light of and considering the entirety of the evidence, this Court finds that both Richards and Butler had agreed to the procedure described in Butler's July 13th letter to Richards." Consistent with the statement, we are reminded that "[t]he trial court was in the best position to assess the credibility of the witnesses and the weight to be accorded their testimony, and we give due regard to its opportunity to observe the witnesses and the evidence first hand." *Cowan v. Mervin Mewes, Inc.*, 1996 SD 40, ¶ 15, 546 N.W.2d 104, 109.

[¶ 18] The July 13th letter referred to by the trial court included the following relevant statements:

On June 24 I told you that Lewis had cooperated with Dakota Placers and that they would admit service on the pleadings in a strict foreclosure action and would, after the expiration of 20 days from the commencement of the action, stipulate to the entry of a strict foreclosure judgment and waive the 10–day redemption period provided for by statute. You agreed. In reliance on this agreement my clients proceeded to raise the money necessary to pay off the contract and meet the additional 20–day period.

Therefore, we accept the finding that Richards agreed to a twenty-day extension of the deadline in exchange for Dakota Placers waiving the thirty-day time period to answer and the minimum ten-day redemption period.

3. SDCL 53–9–4 states:

Penalties imposed by contract for any nonperformance thereof are void. This section does not void obligations penal in form such as heretofore have been commonly used, but it voids their penal clauses.

4. SDCL 21–50–1 provides:

## [¶ 19] II. Default/Liquid Damages Provision.

[¶ 20] Lewis argues the trial court erred when it found that the default clause in the contract for deed was a void penalty under SDCL 53–9–4.[3] Before the default provision is discussed, we note that, according to SDCL 21–50–1, when a default occurs in a contract for deed, an action for strict foreclosure may be brought.[4] This is not mandatory, however, as parties to a contract are free to negotiate and agree upon an alternate, remedial clause. An example of such a negotiated clause is a default provision.

[¶ 21] We addressed the issue of whether a default clause in a contract was a void penalty in *Heikkila v. Carver*, wherein we stated:

Whether a forfeiture provision in a contract is an enforceable liquidated damage provision or an unenforceable penalty is a question of law for the trial court to determine "based upon a consideration of the instrument as a whole, the situation of the parties, the subject matter of the contract, the circumstances surrounding its execution, and other factors."

378 N.W.2d 214, 216 (S.D.1985) (quoting *Prentice v. Classen*, 355 N.W.2d 352–55 (S.D. 1984) (citing *Walter Motor Truck Co. v. State, etc.*, 292 N.W.2d 321, 323–24 (S.D. 1980))); *see also Safari, Inc. v. Verdoorn*, 446 N.W.2d 44, 46 (S.D.1989). Therefore, we review the trial court's decision de novo.

[¶ 22] The default provision in question is stated above in this opinion. Such a provision is usually upheld if

(1) at the time the contract was made the damages in the event of breach were incapable or very difficult of accurate estimation, (2) there was a reasonable endeavor by the parties to fix compensation, and (3) the amount stipulated bears a reasonable

Whenever default has occurred in the performance of any of the terms and conditions of an executory contract for the sale or exchange of real property, an action may be brought in the circuit court for the county in which such property, or some part thereof, is situated for a foreclosure of all rights under such contract asserted adversely to the plaintiff in such action.

relation to probable damages and is not disproportionate to any damages reasonably to be anticipated.

*Heikkila,* 378 N.W.2d at 216. The trial court found that element (2) was not met, because not only was there no endeavor to fix a fair compensation in this case, but there also was no discussion whatsoever of the entire provision.

[¶ 23] As to a discussion of the provision, a review of the transcript reveals the following statements from Richards, counsel for Lewis:

COUNSEL: It's further my understanding that this is kind of a boiler plate or form contract that you used?

RICHARDS: That's correct.

COUNSEL: What part of this contract would not be boiler plate or form?

RICHARDS: Names, property description and any changes that the parties wanted to have.

COUNSEL: Do you remember what changes were requested or negotiated in this particular contract different from your form?

RICHARDS: No, I don't believe so. I don't recall that.

\* \* \* \* \* \*

COUNSEL: Paragraph or section 16 concerning default, that I believe we established before, is a form paragraph you use or were using at that time in all your contracts for deed?

RICHARDS: That's correct.

COUNSEL: Without any specific modifications to fit the circumstances of this sale, other than, of course, the names of the parties. Would that be accurate?

RICHARDS: I believe that's accurate.

These admissions by Lewis' counsel clearly support the trial court's finding that the parties did not discuss fixing compensation or the default provision in general. Without such a discussion or negotiation, the provision constitutes an unenforceable penalty. *See Heikkila,* 378 N.W.2d at 216. Since the default provision is invalid, the trial court did not err in giving Wandler a ten-day redemption period.

### [¶ 24] III. Remedy for Penalty Provision.

■ [¶ 25] Lewis claims the trial court erred in determining the proper relief for a penalty provision. He claims the proper remedy is to adjust the equities while vesting title in the nondefaulting party, Lewis.

[¶ 26] If the trial court were to do as Lewis suggests, and vest the title in Lewis, a forfeiture would exist. As we have stated numerous times, "The general rule of this court is that the law abhors a forfeiture. 'Forfeitures are considered as odious in the law, and are not favored by the courts. Courts of equity will seize upon slight circumstances to relieve a party therefrom.'" *BankWest, N.A. v. Groseclose,* 535 N.W.2d 860, 864 (S.D.1995) (quoting *Ford v. Hofer,* 79 S.D. 257, 261, 111 N.W.2d 214, 216 (1961)); *see also Beitelspacher v. Winther,* 447 N.W.2d 347, 351–52 (S.D.1989); *State v. Three ISO–2 Devices, etc.,* 296 N.W.2d 510, 513 (S.D.1980).

■ [¶ 27] Furthermore, when compensation may be made, there should be no forfeiture. *Bankwest,* 535 N.W.2d at 865 (citing *Barnes v. Clement,* 12 S.D. 270, 274–75, 81 N.W. 301, 302 (1899)). In other words, the defaulting party, Dakota Placers, should be given an opportunity to cure the default. *Id.*

[¶ 28] The trial court found Dakota Placers is entitled to cure the default because the parties' attorneys agreed to a strict foreclosure action and Dakota Placers acted on the understanding that Lewis had given another extension. Under these facts, Dakota Placers agreed to waive both the thirty-day time period allowed for answering the complaint and the ten-day statutory redemption period.

[¶ 29] Furthermore, the trial court noted Wandler was operating under the assumption Lewis was still the seller because Lewis failed to inform Wandler through attorney communication that Kranz was the assignee of Lewis' interest. This is significant because, while Lewis desired only payment of the contract, Kranz wanted to retain the property. A strong piece of evidence supporting this finding is a letter from Richards to Butler using the phrase "my client" rather

than referring to Kranz or Lewis or both.[5] The letter also contained a suggestion by Richards that "my client would still be open to some sort of mining venture by your clients if they find further funding."

[¶ 30] In addition, as Butler informed Richards, Dakota Placers was able to cure the default through the financial assistance of Wandler, and fully intended to do so. Butler testified that, had he known there was resistance to the twenty-day time extension, he would have informed his client so that a timely payment could have been made.

[¶ 31] When it determined an equitable resolution of this dispute, the trial court also relied on the conduct of Richards while he was acting as an escrow agent. "It is generally accepted that an escrow agent is the agent and fiduciary of all parties to an escrow agreement." *American State Bank v. Adkins*, 458 N.W.2d 807, 810 (S.D.1990) (citing *Kirby v. Palos Verdes Escrow Co., Inc.*, 183 Cal.App.3d 57, 227 Cal.Rptr. 785 (1986); *Maganas v. Northroup*, 135 Ariz. 573, 663 P.2d 565 (1983); *Southern Cross Lumber & Millwork Co. v. Becker*, 761 S.W.2d 269 (Mo.Ct.App.1988); *Eastern Atl. Transp. and Mechanical Eng'g, Inc. v. Dingman*, 727 S.W.2d 418 (Mo.Ct.App.1987); *Freegard v. First W. Nat'l Bank*, 738 P.2d 614 (Utah 1987); *Smith v. First Nat'l Bank & Trust Co. of Sturgis*, 177 Mich.App. 264, 440 N.W.2d 915 (1989); *Higgins v. Kittleson*, 1 Ariz.App. 244, 401 P.2d 412 (1965); *Patel v. Gannaway*, 726 F.2d 382 (8th Cir.1984)).

[¶ 32] One of the duties of an escrow agent is "to act in strict accordance with the terms of the escrow agreement." *Id.* (citations omitted). Although Richards was Lewis' lawyer, he acted as the escrow agent for both Lewis and Dakota Placers. Therefore, he had a fiduciary duty to both of them. The trial court found that, when Richards transferred Lewis' interest in the contract to Kranz and delivered the quitclaim deed to Kranz, his actions were "inconsistent with his fiduciary duty to both buyer and seller." Richards actually delivered the deed to Kranz without notice to Dakota Placers while the parties were negotiating. This is certainly inconsistent with Richards' duties as the escrow agent.

[¶ 33] In addition, Richards' delivery of the deed constitutes an invalid conveyance. As we stated in *Schmidt v. Musson*, when a deed is placed in the hands of a third person to hold until a certain act is performed, no title passes until that act is performed. 20 S.D. 389, 395, 107 N.W. 367, 370 (1906); *see also Day v. Northwest German Farmers' Mut. Ins. Co.*, 57 S.D. 189, 193–94, 231 N.W. 900, 902 (1930) (stating that when a deed is delivered by the escrow agent contrary to the instructions of the grantor, title does not pass). Since Richards did not comply with the clear language of the escrow provision in the contract, the delivery to Kranz is considered a nullity.

[¶ 34] The aforementioned circumstances cause us to agree with the manner in which the trial court adjusted the equities in this case.

[¶ 35] **IV. Standing.**

[¶ 36] Lewis also argues that Wandler does not have standing to bring this cause of action because the assignment in September of 1994 from Dakota Placers to Wandler was not valid as it lacked consent from Lewis. The trial court concluded that the assignment was valid, thereby giving Wandler standing to bring this action.

[¶ 37] The assignment provision in the contract, as stated above, provides that interest in the contract cannot be assigned without first receiving the express written permission of the other party. The purpose

---

5. The following testimony demonstrates the confusion Richards caused:

COUNSEL: Now in this letter ... Reed, you speak in the first paragraph, "My client is not a little concerned."

RICHARDS: Uh-huh.

COUNSEL: Which client are you talking about?

RICHARDS: That would be Mr. Kranz.

COUNSEL: The next sentence, "In view of his"—emphasis on his— "continued operation," who would this be?

RICHARDS: That would be Mr. Lewis.

COUNSEL: Would Mr. Butler, receiving this letter, have any idea that you were talking about Kranz in one sentence and Lewis in the next?

RICHARDS: No, I don't think so.

of this provision is to provide security to the parties as far as performance is concerned. "At most, this stipulation against an assignment is merely collateral to the main purpose of the contract, designed as a means of securing and enforcing performance of what was undertaken by the vendee, to wit, the prompt payment of the purchase money." *Johnson v. Eklund,* 72 Minn. 195, 75 N.W. 14, 15 (1898). Likewise, in *Smith v. Martin,* the Oregon Supreme Court stated, "the provision against assignment without the consent of the seller is made for his benefit[.]" 94 Or. 132, 185 P. 236, 238 (1919). *Smith* involved a contract for the sale of land which included a similar nonassignment clause to the one in this case.[6] As in the Oregon case, the purpose of the provision in the case at hand remains unaffected by the assignment, because Lewis did not suffer any negative consequences arising from the assignment.

■ [¶ 38] The Oregon court further referred to the assignment provision, stating, "like all other provisions in favor of a party, he may waive it if he chooses." *Id.* Similarly, in *Smith v. Hegg,* this Court held the consent to an assignment of a lease can be waived by a party's conduct. 88 S.D. 29, 33, 214 N.W.2d 789, 791 (1974) (citing *Baker v. McDel Corp.,* 53 Wis.2d 71, 191 N.W.2d 846 (1971); *Jamson v. Poulos,* 184 Neb. 480, 168 N.W.2d 526 (1969); *Keller v. Henvit,* 219 Minn. 580, 18 N.W.2d 544 (1945)). *See also Kane v. Schnitzler,* 376 N.W.2d 337, 339–40 (S.D.1985) (holding the right to rescind the contract was waived due to the party's affirmation of the contract) (*upheld in Nielsen v. McCabe,* 442 N.W.2d 477, 481 (S.D.1989)). Lewis' conduct throughout his relationship with the other parties "leads to the conclusion that he did not intend to insist upon the enforcement of the condition requiring his written assent to an assignment of the contract." *Smith,* 185 P. at 241. The record discloses that the nonassignment provision was generally not enforced by Lewis. In fact, only one written consent exists which

was extended approximately twenty days after the assignment. Thus, the record reveals Lewis acquiesced in the previous nonconsensual assignments. He also accepted payments made pursuant to the contract following these prior assignments. As such, "he accepted the benefits of the unauthorized assignment[s.]" *Id.* Therefore, he cannot now be heard to complain that the unauthorized assignment causes Wandler to lack standing.

[¶ 39] In addition, there is no language in this provision stating an unauthorized assignment renders the transaction void, which is often required to hold the assignee lacks standing. *See, e.g., Paul v. Chromalytics Corp.,* 343 A.2d 622, 625–26 (Del.Super.1975) (holding assignee lacked standing due to an unauthorized assignment of the contract, because the contract included a nonassignment provision stating assignments without consent are void). Other courts have held a contract should not be forfeited after an unauthorized assignment, especially when the assignee is ready and able to pay (or has paid) the remaining due on the contract. *See, e.g., Johnson,* 75 N.W. at 15; *Obermeier v. Bennett,* 230 Neb. 184, 430 N.W.2d 524, 529 (1988); *Wagner v. Cheney,* 16 Neb. 202, 20 N.W. 222, 223 (1884); *Nielsen v. Baldridge,* 173 Or. 555, 146 P.2d 754, 758–59 (1944); *Morgan v. Baunach,* 68 Or.App. 496, 684 P.2d 589, 595 (1984). Not only was Wandler able to pay the remaining amount due, but Lewis, as the trial court found, was also not harmed financially or legally by the assignment.

[¶ 40] The previous acceptance of assignments without written consent, the lack of a provision for a forfeiture, the reason behind the provision being unaffected, the receipt of contract payments following the prior nonconsensual assignments, and the fact that Wandler was able to pay the remaining due on the contract, cause us to agree with the trial court that a valid assignment existed.[7] In fact, the record reveals Lewis and Kranz

6. The provision states: "He will not assign or transfer this contract, nor deliver the possession of said premises to any person or persons whomsoever without the consent in writing of the said first party."

7. Further, the contract specifically provides the seller cannot unreasonably withhold consent to an assignment. ¶ 3, supra. The record discloses no evidence demonstrating a reasonable rationale for Lewis to withhold consent.

failed to follow the contract even as to default.[8] Having such an assignment, Wandler possesses the requisite standing.

### [¶ 41] V. Redemption Calculation.

[¶ 42] Lewis argues the trial court erred in its calculation of Wandler's redemption

| | |
|---|---|
| TOTAL DUE VENDOR | $163,095,47 |
| Vendee's attorney fees | 11,903.27 |
| REVISED TOTAL | $151,192.20 |

As we review the trial court's assessment of the redemption amount, we·are reminded that "[w]e do not search out reasons to reverse the trial court[.]" *Peterson v. Beck*, 537 N.W.2d 375, 379 (S.D.1995) (citing *In re Estate of Smith*, 520 N.W.2d 80 (S.D.1994); *City of Winner v. Bechtold Invs., Inc.*, 488 N.W.2d 416 (S.D.1992)).

[¶ 43] As to the balance due on the contract, Lewis claims the amount should be $180,000, rather than $141,230.63, because the court treated three payments made by Dakota Placers as payments on the principal when they were actually payments in consideration for extensions. This argument is contrary to the record, however, as it discloses that the first installment of $36,190.80 was made pursuant to the April 24, 1991, addendum to the contract for deed. This is further clarified by the agreement for continuation of payment entered into on November 8, 1991. This agreement states: "The final amount *second installment* of the 1991 payment shall be made no later than 90 days from November 9, 1991, which would be February 7, 1992." (Emphasis added.)

amount in three respects: the balance due, the calculation of interest, and the award of attorney fees. The trial court fixed the redemption figure as follows:

| | |
|---|---|
| Balance due on the contract | $141,230.63 |
| Interest | 17,868.34 |
| Unpaid real estate taxes | 3,996.50 |

[¶ 44] The last payment on the contract was made pursuant to an agreement entered into on April 16, 1992, which states: "The final amount of the second installment of the 1991 payment shall be made no later than April 16, 1992. Buyer shall, at that time, pay the sum of $23,449.33 (which is $36,190.80 installment minus $12,741.47 payment) plus $2,344.93 interest plus $1,809.54 late payment penalty for a total of $27,603.80." The trial court followed the language of these agreements and gave Wandler credit for the $23,449.33 payment made on April 16, 1992. In addition to the aforementioned agreements, notes written by Lewis, a letter written by Richards, and Kranz' testimony all support the conclusion made by the trial court to apply $141,230.63 to the principal.

[¶ 45] As to the calculation of interest, Lewis maintains the trial court erred in requiring interest only for the period of time between April 16, 1993, and July 13, 1993, on the theory that, had the sellers permitted the buyer to tender on July 13, 1996, no interest would have accrued beyond that date. Since we held above that Wandler should have been allowed to cure the default on July 13,

---

8. The following testimony demonstrates this failure of the seller and escrow agent to follow the contract:

> COUNSEL: ... Reading the contract fairly says, "Upon receipt of written instructions and proof by the Seller that Seller has terminated and canceled this Agreement." What written instructions and what proof did you as escrow agent receive that the seller had terminated and canceled this agreement.
> RICHARDS: I have nothing in writing.
> COUNSEL: Why not?
> RICHARDS: Why not?
> COUNSEL: Yeah.
> RICHARDS: Because Mr. Kranz was there in my office and said, "This contract is canceled and terminated." And in my own knowledge, I knew that the payments had not been made.

> COUNSEL: Did he tell you that this contract is canceled and terminated?
> RICHARDS: Yeah.
> COUNSEL: And as far as written instructions, did you have written instructions?
> RICHARDS: No.
> COUNSEL: Why not?
> RICHARDS: I didn't want to do a useless act.
> COUNSEL: Well now, you drafted the contract, Reed. I guess maybe I'm a little confused. Why do we have this criteria in the contract as to what happens in the event of a default and what it takes to deliver the deed out of escrow if you aren't going to follow it? What's the ·reason for that language there?
> RICHARDS: As we talked about, it's my standard escrow language in the contract and usually you have a third party escrow.

1996, the trial court did not err in limiting the interest to that period.

[¶ 46] Lastly, Lewis argues the trial court erred in awarding attorney fees to Wandler but not to Lewis. As we stated in *Jade, Inc. v. Bendewald*:

It is well established that reasonable attorney fees may be awarded in actions to foreclose on real estate contracts. SDCL 21–50–4 (attorney fees awarded as part of costs); *Wolken v. Bunn*, 422 N.W.2d 417, 420 (S.D.1988) (same); *Dow v. Noble*, 380 N.W.2d 359, 360 (S.D.1986) (attorney fees may be included as part of balancing equities).... When included as part of the equity of redemption, we review the trial court's award of attorney fees under the clearly erroneous standard. *Dow*, 380 N.W.2d at 360.

468 N.W.2d 138, 143 (S.D.1991). Lewis fails to demonstrate the attorney fees awarded in this case are clearly erroneous, especially in light of the lack of evidence to support the fees requested by Lewis. He submitted a document stating that Richards was entitled to $1,407.73, without any indication how that amount was determined.

[¶ 47] We affirm. Lewis also raises the issues of unclean hands and laches which lack merit and will not be addressed.

[¶ 48] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

