## DISTASIO v. GERVASIO.

1. VENDOR AND PURCHASER—ASSIGNMENTS—WAIVER OF APPROVAL.
   The requirement, in a land contract, of indorsement and approval by the vendor to validate an assignment thereof by the vendee, was waived by the vendor's acceptance from the assignee and retention of the payments required by the contract.[1]

2. QUIETING TITLE—GOOD FAITH PURCHASER ENTITLED TO DEED AS ASSIGNEE OF VENDEE.
   In a suit to remove a cloud from the title to a city lot, where it appears that plaintiff, an uneducated foreigner, in good faith purchased and paid for the lot and was in undisturbed possession for about 16 years, although the sale was not evidenced by any deed or writing, if his vendor was the assignee of the vendee in the original contract of purchase from the owner, plaintiff is entitled to a deed as against the original vendee, who secured a deed from the successor of the original owner by filing an affidavit that he had paid the full purchase price, that he had lost his copy of the contract, and that it was unassigned.[2]

3. ADVERSE POSSESSION.
   If plaintiff's vendor had no right or title to the lot, plaintiff, who was in undisturbed possession for over 15 years, is the owner by adverse possession, under 3 Comp. Laws 1915, § 12311, which prescribes the period of limitation rather than section 12314.[3]

4. PLEADING—ALLEGATIONS NOT DENIED ADMITTED.
   Every material allegation in a bill as to which defendant has knowledge or belief, not explicitly denied in his answer, is taken as admitted.[4]

5. QUIETING TITLE—PURCHASER WITH KNOWLEDGE OF GRANTOR'S FRAUD HAS NO STANDING IN COURT OF EQUITY.
   Where the grantee of a city lot had full knowledge of

[1]Vendor and Purchaser, 39 Cyc. p. 1675; [2]Adverse Possession, 2 C. J. § 332; Quieting Title, 32 Cyc. p. 1330; [3]Adverse Possession, 2 C. J. § 192; [4]Equity, 21 C. J. § 564 (Anno); Pleading, 31 Cyc. p. 208.

the rights of plaintiff, who was in possession under claim of ownership, and knew or was chargeable with knowledge that his grantor obtained his deed by deceit, he has no standing in a court of equity in a suit by the true owner to remove a cloud from his title.[5]

6. ADVERSE POSSESSION—STATUTE REFERRING TO POSSESSION UNDER CONTRACT NOT APPLICABLE WHERE POSSESSION HELD UNDER CLAIM OF TITLE.

In a suit to remove cloud from title, where plaintiff paid the full purchase price and went into possession of a city lot under the supposition that he was the owner, 3 Comp. Laws 1915, § 12314, referring to possession under contract to purchase, has no application in determining his right to title by adverse possession.[6]

Appeal from Gogebic; Driscoll (George O.), J. Submitted January 8, 1926. (Docket No. 73.) Decided April 14, 1926.

Bill by Pompeo Distasio against Faustino Gervasio, Marvin Hughitt, and others to quiet title to land. From a decree for plaintiff, defendant Gervasio appeals. Affirmed.

*E. W. Massie*, for plaintiff.

*Frank A. Bell*, for defendant Hughitt.

*Jones & Patek*, for appellant.

BIRD, C. J. Plaintiff instituted this suit to remove the cloud from his title to a lot in the city of Bessemer. He had relief in the trial court, and the defendants, save Hughitt, appeal. After an examination of the case we find we are in accord with the conclusion reached by the trial court and, therefore, adopt his opinion as the opinion in the case:

"Plaintiff filed this bill in May, 1922, to set aside and vacate certain deeds, to establish his title to a certain lot in Bessemer, and to obtain other relief. There was a hearing at which all of the parties were

[5]Quieting Title, 32 Cyc. p. 1343 (Anno); [6]Adverse Possession, 2 C. J. § 378 (Anno).

represented by counsel. Owing to certain informalities in the pleadings, which have evidently been waived by counsel, a brief statement of the issues is not an easy task. I shall therefore first briefly state the material facts proven at the hearing and later state the issues.

"In 1903, the lot was owned by Cary, one Pierce was his agent with respect thereto. In 1903, Cary, through Pierce, sold the lot to defendant Erikson, under written contract, a copy of which was delivered to Erikson, for $50, reserving the minerals, etc. The contract was not recorded and the lot was then evidently vacant. In 1904, one Trebilcock sold it to plaintiff, plaintiff paying therefor $10 to Pierce and agreeing with Trebilcock to pay to Pierce as agent $50 and interest in addition thereto. This sale was not evidenced by any deed or writing. There is no direct testimony as to what right or title Trebilcock had to the lot. Plaintiff, however, bought it from him in good faith believing he had a right to sell it. He paid for the lot in full in 1904 or 1905. He has since October 24, 1904, been in actual possession of the lot believing and claiming that he and nobody else owned it. Nobody ever questioned his right or title or possession until about 1920. He paid the taxes on the lot from 1904 to 1920, both inclusive, and has had it fenced and had a clothes reel on it and has planted it ever since he bought it. Hughitt, who is a trustee for the Chicago & Northwestern Railway Company in the premises, as was likewise Cary, succeeded to the rights of Cary in 1914. Cary and Pierce are dead. In 1918, defendant Erikson, by means of an affidavit (stating, *inter alia*, that he had lost his copy of the 1903 contract, that he had paid to the vendor's agent the full purchase price and that he had not assigned the contract or did anything to affect his right to a deed) and an indemnity bond, procured a warranty deed from Hughitt under the 1903 contract, which he recorded. In 1921 he deeded by warranty to defendant Gervasio, who recorded his deed and now claims to own the lot thereunder.

"Gervasio is and has long been a neighbor of plaintiff. When he bought the lot he knew plaintiff was in possession of it and thought plaintiff owned it, but, as he admitted on the witness stand, refrained from

asking plaintiff as to his rights because his, Gervasio's, lawyer 'said Distasio had nothing to do with it.' Erikson was living at Ramsay, in Gogebic county, when he procured the deed from Hughitt and at Marenisco township, same county, when he deeded to Gervasio. He was not sworn as a witness, nor has he filed any answer to the plaintiff's bill.

"Erikson and Gervasio jointly appeared to the original bill and summons by S. W. Patek, their attorney. An answer was filed by Mr. Patek on behalf of Gervasio, but not on Erikson's behalf. This answer was coupled with a cross-bill against Hughitt. Hughitt answered, filing a cross-bill against Erikson and Mannie, the surety on the above mentioned indemnity bond, and Erikson and Mannie appeared and answered to this cross-bill through Levi S. Rice, their attorney.

"Plaintiff's original bill, in substance, alleged that Erikson assigned his rights under said 1903 contract to Trebilcock and that Trebilcock in turn assigned to plaintiff.. In paragraph 7 of Hughitt's cross-bill it is alleged, in substance, that plaintiff commenced this suit claiming to be an assignee of said 1903 contract. The answer of Erikson and Mannie admits the allegations of paragraph 7 of Hughitt's cross-bill, which is the last numbered paragraph of that cross-bill, and then proceeds:

" '8. As to any allegations thereof, the cross-defendant, Erik Erikson, neither admits nor denies that he made any transfer or assignment to said Pompeo Distasio of any or the land contract set forth in the answer and cross-bill of the defendant Marvin Hughitt, but demands strict proof thereof.'

"Plaintiff, an uneducated, foreign-born, laboring man with little or no conception of business methods or the intricacies of legal documents, was sworn and testified on his own behalf at the hearing. Trebilcock was unavailable as a witness. After plaintiff had testified his counsel asked leave, which was granted, to amend his bill to conform to the proofs. This was evidently done to avoid any variance which might result from failure to prove an assignment from Erikson to Trebilcock.

"Gervasio is asking that his title be established as against plaintiff; and that in case it is not Hughitt be

made to respond in damages.    His cross-bill does not involve Erikson, his immediate grantor, or ask any relief as against him.    Hughitt asks that Erikson and Mannie be required to answer plaintiff's bill and prays for general relief.

"Some material peculiarities of Erikson and Mannie's answer to Hughitt's cross-bill should be here noted. The document is entitled as an answer to said cross-bill.    The cross-bill contains seven paragraphs.    The allegations of each of these paragraphs are successively admitted in the answer; then follows the paragraph, numbered 8, above quoted.    Number 9 denies that Hughitt is entitled to any of the relief prayed; alleges that the matters and things alleged in his bill are not sufficient in law to entitle him to any of the relief he prays, and prays that they, the cross-defendants Erikson and Mannie, be hence dismissed, etc.    Then follows the formal paragraph alleging that these cross-defendants are without remedy except in a court of equity and formal prayers that Erikson may be decreed to be the owner of the lot in question in the regular chain of title and (2) for general relief.

"Mr. Hughitt's counsel raises the point that no assignment of the 1903 contract could be valid for the want of indorsement and approval which was required by the contract.    If this point could be material under the facts disclosed by the record herein it could not, I think, be sustained.    This requirement of the contract was one which might be waived and it would be waived by the vendor's receipt from the assignee and retention of the payments required by the contract.

"Mr. Gervasio's counsel rely on 3 Comp. Laws 1915, § 12314; *Township of Jasper* v. *Martin,* 161 Mich. 336 (137 Am. St. Rep. 508) ; and *Rodgers* v. *Beckel,* 172 Mich. 544.    They claim that under this statute plaintiff cannot prevail without showing 20 years' adverse possession 'after the last payment was due—or after the last payment was made' on the contract of purchase.    As before stated there is no direct evidence as to how Trebilcock, plaintiff's grantor, acquired any right or title to the lot or that he in fact had any. But I have no doubt that plaintiff purchased and paid for this lot in the utmost good faith and it must be conceded that when he purchased the lot from Trebilcock the latter was either the assignee of Erikson, the

vendee in the 1903 contract, or else was a stranger to the original title. If Trebilcock was in fact the assignee of the last mentioned contract, then, plaintiff, having paid the purchase price and fulfilled the terms of the contract, was in all equity and good conscience entitled to a deed to the premises and it was unquestionably a fraud for Erikson to have procured the deed under which Gervasio claims in the manner he did, and Gervasio, knowing and being chargeable with knowledge of plaintiff's right, stands in an unenviable position before the court. On the other hand if Trebilcock was a mere interloper and sold to plaintiff without having any right or title to the lot I cannot see how Gervasio can claim any advantage under the statute, even if it is given the construction which his counsel claim for it, which I am not prepared to follow without more extended study for the reason that I am inclined to the opinion that section 12311 is the section which prescribes the limitation while 12314, as it did before 1913 when the portion now relied upon was added, merely raises a presumption of possession in the cases therein mentioned.

"That there are good grounds for the conclusion that Trebilcock was in fact Erikson's assignee cannot be denied. He sold the lot to plaintiff for $10 of the purchase price directing plaintiff to pay $50, the 1903 contract price, to Pierce, the agent, with interest. The money was so paid. Plaintiff got no paper from Trebilcock, evidencing the transaction, but, as he testified, he did not know it was necessary to do so. Where is Erikson's copy of the 1903 contract? Erikson apparently did nothing with respect to the lot after plaintiff became interested in it until 1918, about the time Gervasio became desirous of acquiring it. No one has testified that there was in fact no assignment from Erikson to Trebilcock. Erikson must know whether or not there was in fact such an assignment made. He did not take the stand. In his answer to Hughitt's cross-bill he 'neither admits nor denies,' that he made any assignment to Distasio. Gervasio, who appeared to the original bill jointly with Erikson evades the allegation of this assignment in the original bill by stating that he has no knowledge of it and therefore neither admits nor denies it. He said nothing about his belief. It has long been the

rule in this State, and I do not understand it to have been changed, that every answer shall contain an explicit admission or denial of every material allegation in the bill as to which the defendant has knowledge or belief, and every such allegation not denied is taken as admitted.    See Puterbaugh Ch. Pr., p. 106; Circuit Court Rule No. 25, § 2.    Gervasio may not know whether or not such an assignment was made, but it is difficult to believe, in view of his close relations with Erikson that he had no information on the subject sufficient upon which to form a belief upon the subject.    His counsel, Mr. Patek, has handed the court a memorandum of authorities to which is appended the following:

" 'Bill of complaint sets out plaintiff's claim under a land contract—and the bill is sworn to.    Plaintiff sent letters to land office of C. & N. W. Ry. Co., through Mr. Russell then county clerk, with payments on the contract under which plaintiff claims; and the letters (exhibits) show that plaintiff was claiming under the contract just as he alleges in his bill of complaint.'

"Plaintiff impressed the court as a frank and truthful witness.    He testified, in substance, that he did not get any papers from Trebilcock; that he did not think it was necessary; that he paid Pierce, the agent, in $5 and $10 and $15 payments; that he never saw any contract that anybody had; that nobody questioned his right, or title or possession, and he never heard of Erikson's claim to the land until two years before the hearing.

"I am of the opinion that there was in fact an assignment from Erikson to Trebilcock and that an amendment to the original bill was not in fact necessary.    But whether or not I am correct in this conclusion makes little difference here.    Hughitt does not now claim to own the land, except the minerals, and only desires to be freed from liability under the deed to Erikson.    Erikson is entitled to no consideration in a court of equity.    He got his deed through falsehood and without consideration.    Gervasio had full knowledge of plaintiff's rights and knew or was chargeable with knowledge of the deceit of Erikson in procuring the deed from Hughitt.    These men de-

liberately set about to beat an honest man out of his property and have little standing in a court of conscience. It would be a rank injustice to permit them to oust the plaintiff or further harass Mr. Hughitt, who acted in the utmost good faith in the premises. Gervasio's cross-bill will be dismissed. Erikson's and Mannie's cross-bill, if the prayer at the end of their answer is intended as such, will be likewise dismissed. Hughitt will be decreed to be the owner of the minerals in the lot and to be free and clear of all liability to Gervasio and Erikson, and each of them, on account of his deed to Erikson. Plaintiff will be decreed to be the owner of the lot, except the minerals, as against all the other parties hereto. The decree will provide for releases in accordance with the conclusions here reached and for the recording of the decree to operate as such releases in case such releases are not promptly furnished. Plaintiff and Hughitt will each recover their full costs against Erikson and Gervasio. No costs will be allowed for or against the surety Mannie.

"GEORGE O. DRISCOLL,
"Circuit Judge."

Perhaps we should add a word to what has been said with reference to the statute, 3 Comp. Laws 1915, § 12314. We are unable to see how this statutory provision has any application to this controversy. When the trial court held that plaintiff had title by adverse possession the statutory provision became immaterial. Upon the other phase of the case plaintiff does not say that he went into possession by means of a contract or lease. He supposed that he went into possession because he had title. He believed that his grantor had title. He bought and paid for the title in 1904 and has claimed to own the premises ever since. In this view we think the statutory provision is not important.

The decree will be affirmed.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.