2001 SD 121

**D. Mark and Glennis ZARECKY, Plaintiffs and Appellants,**

v.

**James E. THOMPSON, Defendant and Appellee.**

**Nos. 21657, 21660.**

Supreme Court of South Dakota.

Considered on Briefs May 29, 2001.

Decided Sept. 26, 2001.

Gary G. Colbath Jr. and Barton Banks of Banks, Johnson, Colbath & Kerr Rapid City, SD, Attorneys for plaintiffs and appellants.

Mark W. Haigh of Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, Attorneys for defendant and appellee.

VON WALD, Circuit Judge.

[¶ 1.] D. Mark and Glennis Zarecky (Zarecky) appeal from the judgment issued following a court trial. James E. Thompson (Thompson) filed a notice of review of the trial court's denial of his motion for summary judgment.

### FACTS AND CASE SUMMARY

[¶ 2.] D. Mark and Glennis Zarecky purchased two residential lots from James E. Thompson, a residential land developer in Pierre, South Dakota. The lots are located in what is known as Riverplace First Addition, a residential development that Thompson started in 1990 adjacent to the Missouri River.

[¶ 3.] Prior to the purchase of the lots in 1992, Zarecky requested and obtained from Thompson a copy of a 1990 geotechnical exploration report prepared by Twin City Testing. The report specified two major concerns with the building sites next to the river. The first concern was the stability of the adjacent slopes and riverbank; the second was the potential for expansion of the soils due to the presence of fat clays. The report did not detail the stability of the slope. However, it detailed an opinion as to how construction could be attempted on the property. Additionally, the opinion specified that the surface water be directed away from slopes, and that the amount of moisture in the fat clays below the structure be maintained at the same levels both during and after construction.

[¶ 4.] Zarecky knew of these problems prior to the purchase of the lots and prior to the construction of the home. Zarecky is a construction contractor and a Pierre native. He has knowledge of the stability concerns of building next to the river at the bottom of a natural runoff area. Because of the number of concerns regarding the soil conditions, Thompson delivered and Zarecky accepted a warranty deed which specified that Zarecky was responsible for the structural stability of the land and any resulting problems associated from the lack thereof.

[¶ 5.] Prior to construction of the home, Zarecky hired a registered engineer to design a foundation that complied with the recommendations of the Twin City Testing Report. The resulting foundation exceeded the minimum recommendations and was constructed to prevent the shifting due to soil expansion and contraction. The design was based solely on the report of Twin City Testing. Zarecky conducted no further soil tests on the building site. No tests were conducted regarding the slope stability. Construction began on the house in 1993 and Zarecky took up residence that fall.

[¶ 6.] In 1995, Thompson constructed a house on the lot immediately adjacent and north of Zarecky. This house was severe-

ly damaged by subsurface movement of the soils. The house was later abandoned and moved off the site. Around the same time as Thompson's construction, Zarecky experienced problems due to subsurface soil movement and shifting of the foundation of his home. Testimony indicates that problems may have started prior to 1995 and the construction of the Thompson house.

[¶ 7.] In August 1997, Zarecky began this action against Thompson, alleging he negligently altered the flow of water onto the Zarecky property during the construction of his house, and that the damage caused to the Zarecky property was a direct result of Thompson's negligence. Following a court trial, the court entered final judgment and 130 findings of fact and conclusions of law.

## STANDARD OF REVIEW

[¶ 8.] This Court reviews a trial court's findings of fact under the "clearly erroneous" standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law. *Dougherty v. Dougherty*, 482 N.W.2d 320 (S.D.1992); *Jankord v. Jankord*, 368 N.W.2d 571 (S.D.1985). In applying the clearly erroneous standard, our function is not to decide factual issues de novo. The question is not whether this Court would have made the same finding that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. *People in Interest of H.M.*, 474 N.W.2d 267 (S.D.1991); *Maryhouse, Inc., v. Hamilton*, 473 N.W.2d 472 (S.D.1991). We will not overturn the trial court's decision unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Smith v. Sponheim*, 399 N.W.2d 899 (S.D. 1987). Due regard shall be given to the opportunity the trial court had to judge the credibility of witnesses. *State By and Through DOT v. Garvin*, 456 N.W.2d 779 (S.D.1990); *Masek v. Masek*, 89 S.D. 62, 228 N.W.2d 334, 336 (S.D.1975); *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 864 (S.D.1993)

## ISSUE ONE

[¶ 9.] **Does the record adequately support the trial court's factual findings?**

[¶ 10.] "The findings of fact made by the trial court are presumptively correct. The burden to show error is on the appellant." *Mash v. Cutler*, 488 N.W.2d 642, 646 (S.D.1992) (citations omitted). "The credibility of witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the trial court and we accord the trial court some deference based on its observations of the witnesses and the evidence." *Id.* (citing *Gross v. Gross*, 355 N.W.2d 4, 9 (S.D.1984)) (citations omitted). "[D]etermining the credibility of the witnesses is the role of the factfinder. Where the trial court has resolved conflicts in evidence, we cannot change its findings." *Mash*, 488 N.W.2d at 653–54 (citations omitted). Nothing in the record indicates that the court did not give credence to the evidence presented by both sides. "Further, this court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence." *Id.* (quoting *Cunningham v. Yankton Clinic P.A.*, 262 N.W.2d 508, 512 (S.D.1978) (citing *Potter v. Anderson*, 85 S.D. 142, 178 N.W.2d 743 (1970)).

[¶ 11.] Each of the thirteen findings of fact claimed as error by Zarecky has a firm basis in the evidence presented. Zarecky may disagree with the factual findings, but they all originate in the evi-

dence. "The test is whether a judicial mind, in view of the law and circumstances, could reasonably have reached the conclusion." *Nelson v. Nelson Cattle Co.,* 513 N.W.2d 900, 906 (S.D.1994). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *First Nat. Bank of Biwabik, MN. v. Bank of Lemmon,* 535 N.W.2d 866, 869 (S.D.1995) (citations omitted).

## ISSUE TWO

[¶ 12.] **Did the trial court err in relying upon the testimony of Thompson's expert witness, Vern Bump, in supporting its decision?**

[¶ 13.] Zarecky claims that the testimony of Thompson's expert was not based upon a reliable foundation. Zarecky contends that Bump's testimony is unreliable because he did not take any independent soil tests on location, did not write a detailed report on the findings of the area, and relied upon other experts research and reports of the situation. Thompson argues that Bump visited the location a number of times and studied the reports issued by other experts. He researched the history of the slope in question and viewed and studied numerous photographs and documents concerning the Zarecky building site. "We have often stated that 'the value of the opinion of an expert witness is no better than the facts upon which it is based. . . . The credibility of witnesses and the evidentiary value of their testimony falls solely within the province of the [fact finder].' " *Belhassen v. John Morrell & Co.,* 2000 SD 82, 613 N.W.2d 531, 536 (quoting *Bridge v. Karl's, Inc.,* 538 N.W.2d 521, 525 (S.D.1995)).

[¶ 14.] Bump's experience, education, and expertise is in the area of foundations and landslides. Bump is a geotechnical engineer with the South Da-kota Department of Transportation. He has been a geological engineer with the DOT since 1961. His curriculum vitae indicates that he has worked extensively with foundations, soils, and landslides since 1961. He has presented a number of professional papers on landslides and soil formations. He has done extensive research on pilings and foundations. A couple of his more pertinent research papers are *Use of Stone Columns for Landslide Stabilization* and *Effects of Groundwater on Structures.* There is sufficient evidence to show a reliable foundation for Bump's testimony. "A trial court has broad discretion concerning the qualifications of an expert and the admissibility of expert testimony, and it will not be reversed on appeal without a clear showing that it abused its discretion." *State v. Corey,* 2001 SD 53, 624 N.W.2d 841, 845 (quoting *State v. Koepsell,* 508 N.W.2d 591, 593 (S.D.1993); *State v. Spaans,* 455 N.W.2d 596, 598–99 (S.D.1990)).

[¶ 15.] Bump detailed his conclusions during trial and showed precisely how he came to those conclusions. He noted that the landslide affecting the Zarecky property has been active for many years and was first documented in the late 1930s. Entered with his testimony are aerial photos of the land now known as Riverplace First Addition, taken August 16, 1939 and June 19, 1968, as well as current aerial photos. His testimony details the research he went through to make a decision in this case. Bump is eminently qualified to study the location and make an analysis and opinion on the land and soil conditions of the area. The trial court did not err in relying on Bump's testimony in supporting the decision. "Due regard shall be given to the opportunity the trial court had to judge the credibility of witnesses." *Century 21 Associated Realty v. Hoffman,* 503 N.W.2d at 864 (citing *State By and Through DOT*

*v. Garvin,* 456 N.W.2d 779; *Masek,* 89 S.D. 62, 228 N.W.2d at 336).

## ISSUE THREE

**[¶ 16.] Did the trial court err in finding that Zarecky failed to meet the burden of proof based upon the totality of evidence presented at trial?**

[¶ 17.] "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Peterson v. Spink Elec. Co-op.,* 578 N.W.2d 589, 591 (S.D.1998) (citations omitted). To recover under a negligence cause of action, Zarecky must prove that Thompson was negligent and that his negligence was the proximate cause (or a substantial factor) for the injury or damage to their property. "Appellant has the burden of establishing that there is sufficient evidence for the factfinder 'to reasonably conclude, without resort to speculation, that the preponderance favors liability.'" *Jorgenson v. Vener,* 2000 SD 87, 616 N.W.2d 366, 369 (quoting *Leslie v. City of Bonesteel,* 303 N.W.2d 117, 119 (S.D.1981) (quoting *Mulder v. Tague,* 85 S.D. 544, 549, 186 N.W.2d 884, 887 (1971) (citations omitted)). "In [*Leslie* at 119], we stated: 'For proximate cause to exist, *"the harm suffered must be found to be a foreseeable consequence of the act complained of.... [T]he negligent act must be a substantial factor in bringing about the harm." Williams v. United States, 450 F.Supp. 1040, 1046 (D.S.D.1978).'"* *Musch v. H-D Co-op., Inc.,* 487 N.W.2d 623, 625–26 (S.D. 1992); *accord Hansen v. South Dakota Dept. of Transp.,* 584 N.W.2d 881 (S.D. 1998). Testimony was given to support each side's position. The trier of fact believed Thompson's witnesses, and found Zarecky's evidence was not great enough to meet the burden of proof. Due regard was given to each side of the action by the trial court. "Conflicts in the evidence are resolved in favor of the trier of fact." *Cleveland v. Tinaglia,* 582 N.W.2d 720, 727 (S.D.1998) (internal citations omitted). This action of the trial court is not clearly erroneous.

## ISSUE FOUR

**[¶ 18.] Did the trial court err in awarding Thompson his costs and disbursements from trial?**

[¶ 19.] SDCL 15–6–54(d) provides "costs and disbursements under this section shall be waived if proper application is not made within 30 days of the entry of judgment. *For good cause shown, the court may extend the time.*" (emphasis added). Zarecky contends costs and disbursements are waived if not requested within thirty days of the entry of judgment. *Clausen v. Aberdeen Grain Inspection,* 594 N.W.2d 718, 724 (S.D.1999). In *Clausen,* costs were requested immediately after summary judgment was entered. The trial judge dismissed a motion for taxation of costs because Wheatgrowers failed to cite authority and list how costs were incurred. This Court held that the motion for costs was timely and remanded for a determination of entitlement to such costs.

[¶ 20.] Implicit in SDCL 15–6–54(d) is that for good cause shown the court may extend the time period and allow request for costs after the thirty days. The record indicates that there was a mix-up as to when the parties received the signed judgment from the court. The trial court in this case found there was good cause to allow an extension of time. The standard of review for this issue is an abuse of discretion. "[I]n its discretion, and upon such terms as may be just, [the court may] allow an answer or reply to be made, or other act to be done, after the time limited by this title (Judicial Procedure, Civil), or

by an order enlarge such time." *Antonen v. Swanson,* 74 S.D. 1, 5, 48 N.W.2d 161, 163 (1951); *accord Tingle v. Parkston Grain Co.,* 442 N.W.2d 252, 253 (S.D.1989). The power conferred by this section is discretionary and the determination of the trial court will not be disturbed except in cases where the court has clearly abused its discretion. In view of how the extension was allowed, no abuse occurred.

## ISSUE FIVE

[¶ 21.] **Was Thompson entitled to summary judgment based upon the language contained within the warranty deed accepted by Zarecky?**

[¶ 22.] Because we affirm the trial court on all the other issues, we need not address the issue of the suitability of summary judgment based upon the warranty deed.

[¶ 23.] The judgment is affirmed.

[¶ 24.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 25.] VON WALD, Circuit Judge, for MILLER, Chief Justice, disqualified.