2001 SD 122

**Joan MARKS, Petitioner and Appellant,**

v.

**Nancy CLARK, Appellee.**

**No. 21777.**

Supreme Court of South Dakota.

Argued Aug. 29, 2001.

Decided Oct. 3, 2001.

Jamie L. Damon, Pierre, South Dakota, Attorney for petitioner and appellant.

Brent A. Wilbur of May, Adam, Gerdes and Thompson, Pierre, South Dakota, Attorneys for appellee.

MEIERHENRY, Circuit Judge.

[¶ 1.] Joan Powell Marks (Marks) appeals the trial court's denial of a stalking protection order pursuant to SDCL 22–19A–12. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] This case arises out of family dispute involving Marks and her sister-in-law, Nancy Clark. In February of 1999, Marks, an attorney who practiced law in Pierre and Gettysburg, married Bill Marks (Bill), the owner and operator of a farm and ranch in Potter County, South Dakota. 3.Bill's immediate family consisted of his mother and seven sisters, one of whom is Nancy Clark (Clark). Clark was employed at Marks' family farm and ranch operation.

[¶ 3.] Around July 18, 2000, Bill Marks filed for divorce. On October 18, 2000, while the divorce was still pending, Marks sought an ex parte temporary protection order in circuit court against her sister-in-law Clark. Marks alleged that Clark willfully, maliciously, and repeatedly followed and harassed her, that Clark threatened her in a manner causing her fear of great bodily injury or death, and that Clark assaulted her causing physical injury. The court granted the ex parte temporary protection order and set the protection order hearing for November 9, 2000.

[¶ 4.] At the hearing, both parties presented testimony. Marks testified that Bill's family had not approved of their marriage, and that she had feared the family might harm her. Marks claimed that Clark, in particular, had embarked on a course of threatening conduct that caused her to be afraid of Clark. Marks maintained that Clark surveilled her by repeatedly driving past her home in town and watching her when she was on the farm. Marks also suspected Clark of attempting to frighten her by placing a dead badger near a gate Marks entered to care for livestock. Marks further testified that Clark had threatened to kill Marks' horses, had called her vulgar names, and threatened and screamed at her on various occasions. On more than one occasion, Marks claimed she encountered Clark's vehicle on the road to or from the farm when Clark tried to run her off the road going speeds of up to 90 miles an hour. She also believed that Clark was responsible for hunters firing shots near her on opening day of hunting season.

[¶ 5.] Additionally, Marks testified concerning an incident on July 7, 2000 when Clark grabbed her by the arm, causing bruises. This incident involved a disagreement about whether Marks should be in a family picture. The family was taking pictures of Bill and his sisters and Marks insisted on being included in the pictures. The disagreement escalated to the point where Clark grabbed Marks by the arm. The next day Marks contacted the Potter County Sheriff complaining that Clark had assaulted her leaving bruises on her arm. The sheriff took pictures of the bruising on both July 8, 2000 and also on July 11, 2000.

[¶ 6.] Several witnesses, including one of Marks' own witnesses, gave contradictory versions of the events about which Marks testified. While Clark admitted that she and Marks had had arguments, Clark denied making any threats or engaging in any of the threatening behavior that Marks alleged. Bill also denied hearing any of the threats that his wife claims Clark made in his presence. Clark admitted taking Marks by the elbow during the July 7, 2000 picture-taking dispute but only to move her away from the other family members and not to injure her. Other family members testified that Marks had prompted the July 7 incident by her demand to be included in the family picture. Additionally, Clark's husband said he had shot the badger near the spot

where Marks saw it in order to keep it from digging holes in the pasture.

[¶ 7.] The trial court eventually found that the July 7, 2000 incident did not constitute an assault and that the incident was partially provoked by Marks. The court also determined that Clark was not present or caused the shooting of the badger, and that Marks' claim that Clark tried to drive her off the road was unsupported by any testimony and incredible. The court further rejected Marks' testimony about Clark driving by her house. The court found Clark was not a threat to Marks' safety and concluded that she had not willfully, maliciously, or repeatedly followed or harassed Marks or made credible threats to her with the intent to place her in reasonable fear of death or great bodily injury.

[¶ 8.] At the close of the hearing, the trial judge denied the issuance of a protection order and dismissed the case with the following comments:

Well, stalking is a very serious charge and it requires serious evidence. And the evidence that's been presented here today by [Marks] against [Clark] has a number of allegations over a considerable amount of time. In all of those allegations over all that period of time, there has not been one witness to corroborate her story. Therefore, I have no other recourse but to dismiss the case entirely.

Marks appeals raising the following issues:

1. Whether the trial court applied the proper standard of proof.
2. Whether the trial court abused its discretion in denying the protection order.

## STANDARD OF REVIEW

[¶ 9.] The standard of review of a trial court's decision to deny a protection order is the same standard used when reviewing a grant of an injunction. *Sjomeling v. Stuber*, 2000 SD 103, ¶ 11, 615 N.W.2d 613, 616. First, this Court must determine whether the trial court's findings of fact were clearly erroneous.

In applying the clearly erroneous standard, our function is not to decide factual issues de novo. The question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. This court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence. Doubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the successful party's 'version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.'

*Maryhouse, Inc. v. Hamilton*, 473 N.W.2d 472, 474 (S.D.1991) (internal citations omitted). If the findings of fact are not clearly erroneous, accepting the facts as true, this Court must decide whether the trial court abused its discretion in denying the protection order. *Id.* at 474 (SD 1991).

## ANALYSIS AND DECISION

[¶ 10.] **1. Whether the trial court applied the proper standard of proof.**

[¶ 11.] SDCL 22-19A-11 provides that the trial court must determine by a preponderance of the evidence if stalking has occurred. Marks contends that the trial court held her to a higher standard of proof. Or, alternatively, if it did use preponderance of the evidence, she met her burden of proof and should have been granted the protection order. She bases her argument on statements that the trial court made *after* trial. At that time the

court stated that a request for a stalking protection order requires "serious evidence" and corroboration. This is not an accurate standard. One does not need corroboration in order to be granted a protection order. However, the trial court specifically stated in its findings of fact and conclusions of law that it made its determination based upon the standard of proof of preponderance of the evidence.

[¶ 12.] It is well-settled law that a judge's extraneous comments or oral proclamations in court do not control. What the judge actually signs as his legal findings is what this Court looks to. We have previously stated that a trial court's statements have little effect on this Court's review.

> Any expression of opinion or views by the trial judge extraneous to his decision in the manner and form contemplated by law is of no binding force or effect as a matter of law either upon the trial judge himself or any one else. Such expressions by the trial judge are, of course helpful and indeed almost necessary in advising counsel as to the views of the court and for the information of counsel in drafting findings and conclusions for presentation to the court. But such expression of opinion constitutes no proper part of the record on appeal, whether announced in the form of an oral statement in open court transcribed by the reporter or in the form of a memorandum or letter addressed to counsel.

*Western Bldg. Co. v. J.C. Penney Co.*, 60 S.D. 630, 636–637, 245 N.W. 909, 911–912 (1932) (internal citations omitted).

[¶ 13.] The trial court's comments regarding stalking as a "serious charge" needing "serious evidence" and corroboration can only be characterized as extraneous comments since this language does not appear in the findings of fact or conclusions of law. Therefore, we find that the trial court used the proper standard of proof.

[¶ 14.] **2. Whether the trial court abused its discretion in denying the protection order.**

[¶ 15.] Marks argues that proof of her injury from the July 7, 2000 incident alone was sufficient for the trial court to grant a protection order. Additionally, she argues that based on the totality of the circumstances, she has also proved that she had been stalked as defined in SDCL chapter 22–19A.

[¶ 16.] South Dakota law allows for the trial court to grant protection orders to individuals subject to domestic abuse, as provided in SDCL chapter 25–10, or to individuals subject to stalking, as provided in SDCL chapter 22–19A. Under SDCL 22–19A–8, the legislature has created a stalking protection order (1) in cases of stalking as it is defined in chapter 22–19A * or (2) in cases of physical injury as a result of an assault or a crime of violence as defined in subdivision 22–1–2(9).

[¶ 17.] The trial court determined that the July 7, 2000 incident, which Marks characterized as an assault and physical

---

* SDCL 22–19A–1 is as follows:

Any person:

(1) Who willfully, maliciously, and repeatedly follows or harasses another person; or

(2) Who makes a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury; or

(3) Who willfully, maliciously, and repeatedly harasses another person by means of any verbal, electronic, mechanical, telegraphic, or written communication; is guilty of the crime of stalking. Stalking is a Class 1 misdemeanor.

injury did not constitute an assault, was not designed to cause bodily injury and did not cause bodily injury. The court found Marks to be incredible and that Marks had, in part, provoked the incident. The trial judge is in the best position to judge the credibility of the witnesses. This Court cannot conclude that the trial court's findings were clearly erroneous. Further, based on the entire evidence, we do not have a definite and firm conviction that a mistake has been committed.

[¶ 18.] Since we have determined that the findings of fact are not clearly erroneous, then accepting the facts as true, this Court must decide whether the trial court abused its discretion in denying the protection order. The trial court could only grant a protection order if it found by a preponderance of the evidence that Marks had physical injury as a result of an assault or if Clark was guilty of stalking. The trial court found Marks injuries were not a result of an assault and that she had not been stalked by Clark. Marks had failed to meet her burden of proof. Thus, it was not an abuse of discretion for the trial court to deny the protection order.

[¶ 19.] We affirm.

[¶ 20.] SABERS, Acting Chief Justice, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 21.] MEIERHENRY, Circuit Judge, sitting for MILLER, Retired Chief Justice, who at the time this action was submitted to the Court, was a member of the Court.