2002 SD 75

**Shirley R. BROWN, Plaintiff
and Appellant,**

v.

**Joan POWELL and James S. Donovan,
Defendants and Appellees,**

and

**Benita Donovan, Defendant.**

No. 22018.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2002.

Decided June 26, 2002.

Brent A. Wilbur and Bobbi J. Benson of May, Adam, Gerdes and Thompson, Pierre, for plaintiff and appellant.

Joan Powell, Pierre, for defendants and appellees Joan Powell and James Donovan.

AMUNDSON, Justice.

[¶ 1.] Shirley Brown appeals a trial court order directing enforcement of the terms of a contract for deed between herself and the assignee of the contract, Joan Powell. We affirm.

FACTS

[¶ 2.] Brown owned some apartments in Gettysburg, South Dakota. In 1996, she sold the property to James and Benita Donovan for $30,000 on a contract for deed. The contract acknowledged a $5,000 down payment with the balance payable at the rate of $303.19 on the first day of each month and the final payment due on June 1, 2006. The contract required Donovans to pay the real estate taxes and to insure the premises and contained the following nonassignment clause:

Neither this agreement nor any interest in the above described real property shall be assigned or conveyed by [Donovans] without written consent of [Brown].

[¶ 3.] Donovans fully complied with the contract for deed until October 1998. By that time, James Donovan had incurred an indebtedness to attorney Joan Powell for her legal fees in another matter. Thus, on October 23, Donovan assigned his interest in the rents and profits from the Gettysburg property to Powell.

[¶ 4.] Donovans continued to make the payments under the contract for deed until February 16, 1999. On that date, James Donovan entered into a real estate purchase agreement with attorney Powell to sell his interest in the contract for deed to her. From February 17, 1999 to September 27, 1999, Powell made the payments required by the contract for deed to Brown with checks drawn on an account entitled "Joan Elayne Powell, Esq. Business Account."

[¶ 5.] In October 1999, Brown refused Powell's monthly payment. On November 12, she commenced a foreclosure action against Donovan alleging default on the contract for deed in the failure to insure the premises, the failure to make timely payments and the failure to pay real estate taxes. On December 9, Powell, acting as Donovan's attorney, answered the complaint and generally denied its allegations. On December 13, Powell filed her own notice of claim of interest in the realty asserting the assignment of rents and profits, the execution of the real estate purchase agreement and her receipt of a quitclaim deed to the property from Donovan.

[¶ 6.] On March 15, 2000, Powell moved to intervene in the action against Donovan and for a dismissal of the suit. A hearing was held on March 27. During the hearing, Powell tendered the full amount owing on the contract for deed from October 1999 to the hearing date. Powell also represented that she had satisfied all other indebtedness against the property including utility bills, taxes and insurance. After the hearing, the trial court entered findings of fact, conclusions of law and an order dismissing Donovan as a party, granting Powell's motion to intervene, and directing that she tender past due payments under the contract and that Brown accept the payments pursuant to a valid assignment of the contract.

[¶ 7.] Brown subsequently filed a series of motions including a motion to amend her complaint to include Benita Donovan

and Joan Powell as defendants. In addition, Brown filed a motion for the trial court to vacate its previous findings, conclusions and order on the basis that Powell had misrepresented her payment of the real estate taxes on the property. A hearing was held on November 27 and, on December 4, the trial court entered its order granting Brown's motions and specifically vacating its findings as to the payment of real estate taxes by Powell.

[¶ 8.] The action was brought to trial before the court on May 8, 2001. During trial, Powell explained the confusion over her payment of the real estate taxes on the property and provided evidence of her payment of all outstanding indebtedness including the taxes and insurance. After trial, the trial court entered findings of fact and conclusions of law incorporating its earlier findings and further determining that: the taxes and insurance on the property were current; the amount of the default was five times the $303 monthly payments; the default was caused by hard feelings and miscommunication; Powell made a good faith effort to keep the contract up to date and follow it; and, that it would be inequitable to forfeit the contract. Based upon its findings and conclusions, the trial court entered an order very similar to the order it had previously vacated. The court further ordered that Powell should retender the past due monthly payments to Brown pursuant to a valid assignment of the contract for deed from Donovan and that the original terms of the contract should be enforced between Brown and Powell. Brown appeals.

## ISSUE

[¶ 9.] **Are the trial court's findings of fact clearly erroneous?**

[¶ 10.] Brown challenges the validity of Donovan's assignment of the contract for deed to Powell on the basis of the contract's nonassignment clause and the lack of written consent to the assignment by Brown. Powell argues that Brown waived the nonassignment clause by accepting contract payments from her after the assignment. We agree.

[¶ 11.] As authority for her argument, Powell relies upon this Court's holding in *Smith v. Hegg*, 88 S.D. 29, 214 N.W.2d 789 (1974) that a nonassignment provision in a lease was waived by the lessor's actual knowledge of the assignment and acceptance of monthly lease payments from the assignee for approximately five years. *See also Wandler v. Lewis*, 1997 SD 98, 567 N.W.2d 377 (vendor's acquiescence in previous nonconsensual assignments of property and acceptance of payments made pursuant to contract after prior assignments waived nonassignment clause of contract). Other jurisdictions have also held that a nonassignment provision in a land sale contract is waived where the vendor learns of the assignment and accepts payments on the contract from the assignee while abandoning any efforts to revoke the contract. *See Distasio v. Gervazio*, 234 Mich. 482, 208 N.W. 440, 442 (1926)(nonassignment requirement of contract waived by vendor's receipt from assignee and retention of payments required by contract); *Ross v. Page*, 11 N.D. 458, 92 N.W. 822, 825 (N.D.1902)(deviations from provisions of land sale contract waived where vendor accepted and retained money payments knowing that contract had been assigned and that assignee made the payments in reliance on the assignment); *Nielsen v. Baldridge*, 173 Or. 555, 146 P.2d 754, 758 (1944)(vendor waived provision against nonassignment in land contract where vendor permitted escrow to accept payments from assignees after learning of the assignment); *Parker v. Camp*, 656 N.E.2d 882, 884 n. 2 (Ind.Ct.App.1995)(vendor waived any right

to assert nonassignment clause in land contract where vendor accepted several payments from assignee of contract and correspondence between vendor's agent and assignee demonstrated vendor treated contract as being with assignee).

[¶ 12.] Here, the trial court found as a fact that there was "strong evidence that [Brown] was aware of Mr. Donovan's assignment of the Contract for Deed while accepting payment thereunder from Joan Powell." Brown argues that this finding is clearly erroneous and that there is no evidence to support it. We disagree.

This Court reviews a trial court's findings of fact under the "clearly erroneous" standard.... In applying the clearly erroneous standard, our function is not to decide factual issues de novo. The question is not whether this Court would have made the same finding that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. We will not overturn the trial court's decision unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. Due regard shall be given to the opportunity the trial court had to judge the credibility of witnesses.

*Zarecky v. Thompson,* 2001 SD 121, ¶ 8, 634 N.W.2d 311, 314 (citations omitted).

[¶ 13.] Contrary to Brown's assertions, we find sufficient evidence to support the finding that she was aware of the assignment of the contract. Brown's son, who has long held a power of attorney to manage her affairs, admitted at trial that he knew his mother was accepting contract payments from Powell. Although he also testified that he knew that Powell was Donovan's attorney and that he thought Powell was acting on Donovan's behalf in making the payments, there is no logic in this assertion. Powell represented Donovan in a *criminal* matter unrelated to any real estate transaction. Neither Brown nor her son provided any explanation whatsoever as to why Powell's representation of Donovan in a separate criminal proceeding should have led them to believe that Powell was acting on Donovan's behalf in making payments on the contract for deed. Thus, we find no clear error in the trial court's rejection of this explanation.

[¶ 14.] Certainly Powell's payments were sufficient to suggest to a prudent mind that "further inquiry should be made" concerning the nature of Powell's interest in the realty. *See Smith,* 88 S.D. at 34, 214 N.W.2d at 792 (finding that purchaser knew of leasehold interest in realty held by original lessee's assignee upheld where purchaser possessed information sufficient to suggest to a "prudent mind that further inquiry should be made"). The seven checks Powell issued to Brown from February 1999 through September 1999 were all written on an account plainly captioned:

JOAN ELAYNE POWELL, ESQ.
BUSINESS ACCOUNT

Powell further testified that:

The fact of the matter is that I wrote on the checks what they were for. They knew by living in this small community that Donovan didn't have anything to do with the apartments anymore, had open and notorious possession of the apartments.

The checks admitted as evidence support this testimony. The check written in February 1999 to cover contract payments for January and February contained the notation, "Donovan contract." The second check written in March 1999 contained the notation, "March Donovan Apts." The

third check written in May 1999 to cover payments for April and May contained the notation, "Apr/May." The fourth check written in June of 1999 contained the notation "June 99." The sixth check written in August of 1999 contained the notation, "Aug 99." None of the checks gave any indication in any fashion that the payments on the contract were being issued by Powell on Donovan's behalf rather than in her own right. Thus, they provided Brown with no reasonable basis to form such a belief.

[¶ 15.] If the checks alone were insufficient to make Browns aware of the assignment of the contract for deed and Powell's assumption of some sort of interest in the realty, Powell also showed that she had an exchange with Brown's counsel in June 1999 about insurance coverage on the property. In response to counsel's inquiry, Powell provided him with copies of insurance policy declaration pages showing the property was insured. Some of the declaration pages named both Powell and Donovan as insureds. Powell also indicated in her testimony that she orally informed counsel at that time that she had the property.

[¶ 16.] In addition to the checks and the insurance policies, Powell also presented extensive evidence and testimony concerning her payment of various debts against the property including utilities, taxes and insurance. Powell testified that her payment of these debts and her possession of the property and other efforts to improve it and clean it up were open and notorious in the small community.

[¶ 17.] In conjunction with the foregoing evidence, this Court must also remain mindful that foreclosure is an equitable remedy and, therefore, various equitable principles are important to our review in this matter. *See Alma Group, L.L.C. v. Weiss,* 2000 SD 108, ¶ 12, 616

N.W.2d 96, 99 (foreclosure of a mortgage is an equitable action). In that regard, "[t]his Court has emphasized on numerous occasions that the law 'abhors a forfeiture.' 'Forfeitures are considered odious in the law and are not favored by the courts.'" *Bozied v. City of Brookings,* 2001 SD 150, ¶ 24, 638 N.W.2d 264, 273 (citations omitted). Because forfeitures of land sale contracts are highly disfavored by the law, courts are generally quick to find a waiver of conditions alleged as a basis for a claim of breach. *Cochran v. Grebe,* 578 S.W.2d 351, 354 (Mo.Ct.App.1979)(forfeitures are highly disfavored by the law and the courts are therefore quick to find a waiver or estoppel in a case of this sort). In this particular instance, the condition is a covenant against assignment of the contract. Such conditions are also looked upon with disfavor. *See Smith,* 88 S.D. at 32–33, 214 N.W.2d at 791 (though this Court will at times enforce covenants in leases against assignment, such restraints against alienation are looked upon with disfavor and are strictly construed against the lessor).

[¶ 18.] Equity also favors those with a substantial investment in a land sale contract. *See Miller v. Radtke,* 230 Neb. 561, 432 N.W.2d 542, 547 (1988)(ejectment of vendee may be granted as remedy for violating terms of a land contract only where the equities justify such disposition, where property is of less value than the contract price and where such procedure does not offend against justice and equity). *Accord Poommipanit v. Sloan,* 1 Neb.App. 1132, 510 N.W.2d 542 (1993). As held by the Nebraska Supreme Court as a corollary to these principles, "[s]trict foreclosure will be decreed only under peculiar and special circumstances where the purchaser does not have a substantial equity in the property." *Riffey v. Schulke,* 193 Neb. 317, 227 N.W.2d 4, 6 (1975).

[¶ 19.] Here, the trial court specifically found that it would be inequitable to require Powell to forfeit the contract and this finding finds ample support in the testimony and evidence submitted by Powell concerning the extent of her investment in the property. As Powell herself summarized that evidence:

To date there's been $22,585 just on the contract. It's a $30,000 contract. Of course, that includes interest. The payoff on this thing is around 12,000 at this point but the fact of the matter is they've taken $22,585 in monthly payments. And I paid myself $8,489.32, if we count the check, you know, that I wrote back in November for $1,200 plus I've paid—and they've stipulated to this—I've paid one, two, $3,000 in taxes back and current. My client informed me when I took this thing over that the back taxes were paid.

I've bettered the Plaintiffs' position in this case. I took a Contract for Deed that was in serious default that they hadn't done one thing on. They've accepted late payments, they let taxes go by. I don't know what their situation was with prior insurance because I think it was insured through Browns but there were numerous defaults in that contract when I took it over and I've gone in and I've cured all the defaults.

\* \* \*

In addition to the thousands of dollars in taxes and thousands of dollars of payments that I've tendered to Browns, I've also paid thousands of dollars in back utility bills, water bills, garbage bills, things that were sitting on the books when I took this over.

\* \* \*

The Plaintiff has not been damaged. In fact, if I wouldn't have come into this thing they would have gotten stuck with two years of back taxes.

Against these facts, Browns could only argue that they did not want to do business with Powell. As found by the trial court, the equities clearly favor Powell's position in this matter.

[¶ 20.] Based upon the foregoing evidence and principles of equity, we hold that the trial court was not clearly erroneous in finding that Browns were aware of the assignment of the contract for deed to Powell. Nor was it clearly erroneous in finding that Browns accepted payments on the contract from Powell with knowledge of the assignment and that they thereby waived enforcement of the contract's non-assignability clause.

[¶ 21.] Affirmed.

[¶ 22.] SABERS and KONENKAMP, Justices, concur.

[¶ 23.] GILBERTSON, Chief Justice, and GORS, Acting Justice, dissent.

GILBERTSON, Chief Justice (dissenting).

[¶ 24.] I respectfully dissent. I would reverse the trial court's findings as clearly erroneous. Moreover, the trial court committed significant errors of law. I would reverse and remand for a trial on the merits of the breach of contract and foreclosure claims.

[¶ 25.] When Donovan purportedly assigned his rights to Powell, Brown had three options: (1) she could attempt to void the assignment; (2) she could recognize the assignment, but retain her rights against Donovan for the breach of contract; or (3) she could accept the assignment *and waive* her rights against Donovan. *See Garden State Buildings, L.P., v. First Fidelity Bank, N.A.,* 305 N.J.Super. 510, 702 A.2d 1315, 1322 (1997). Brown

claims she chose to void the assignment, as evidenced by her refusal to accept payments from Powell once Brown was aware of the purported assignment. The trial court, however, skipped both options one and two in favor of option three. The court also impermissibly applied *ratification* analysis in place of true waiver analysis. This improper application of law mandates reversal.

[¶ 26.] "A contractual right can be assigned unless ... assignment is validly precluded by contract." Restatement (Second) Contracts § 317(2)(c) (1981). An anti-assignment clause protects the seller by ensuring her the opportunity to choose with whom she contracts and by providing security of performance. *See Wandler*, 1997 SD 98 at ¶ 37, 567 N.W.2d at 384–85. Yet, a valid assignment may still be achieved when the seller elects, by some affirmative action or intentional conduct, not to exercise her power to void the assignment. *See* Corbin on Contracts § 873 (1951). This action or conduct may *ratify* the assignment without waiving the seller's rights against the assignor.

[¶ 27.] Waiver of a valid anti-assignment provision, under South Dakota law, may only be accomplished by the intentional relinquishment of a known right. *Subsurfco, Inc. v. B–Y Water Dist.*, 337 N.W.2d 448, 456 (S.D.1983).

> The doctrine of waiver is applicable where one in possession of any right, whether conferred by law or by contract, and *with full knowledge of the material facts*, does or forbears the doing of something inconsistent with the exercise of the right. To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish *the existing right*.

*Brim v. S.D. Bd. of Pardons and Paroles*, 1997 SD 48, ¶ 48, 563 N.W.2d 812, 823

(emphasis in original) (quoting *Norwest Bank v. Venners*, 440 N.W.2d 774, 775 (S.D.1989)). Therefore, an anti-assignment clause may be waived by a written instrument, a course of dealing, or even the failure to invalidate the assignment, so long as the action is voluntary and unequivocal. *See Wandler*, 1997 SD 98 at ¶ 38, 567 N.W.2d at 385 (holding defendant's repeated acquiescence to previous nonconsensual assignments, and his continued acceptance of payments from the assignee after he was aware of the assignment, evidenced "the nonassignment provision was generally not enforced").

[¶ 28.] The contract for deed in this case clearly contained a valid anti-assignment provision, of which Powell admits she was aware. Despite her knowledge of the anti-assignment provision, Powell never provided the 82–year–old invalid Brown with notice of the assignment. While Powell claimed she attempted to contact Brown once, there is no evidence beside her own testimony to support this assertion. Powell was forced to concede that she never secured a valid waiver of that provision. Thus, we are left to determine whether a judicial mind, in view of the law and the circumstances, could have reasonably concluded that Brown's conduct amounted to a voluntary, knowing and intelligent waiver of her rights against Donovan.

[¶ 29.] There is no evidence in the record to support a finding that Brown knowingly accepted payments from Powell as an assignee. There was no actual notice because Powell did not file a notice of interest in the property until December 13, 1999. This was nearly eleven months after Powell had taken the quitclaim deed from Donovan and long after Powell began making monthly installments. There was no constructive notice because Powell did not record the purchase agreement or quit-

claim deed until December 29, 1999. *See* SDCL 43–28–14 (providing unrecorded instrument is only valid with respect to those who have notice of it).

[¶ 30.] Brown was aware that Powell was Donovan's attorney and believed, as evidenced by the absence of Powell's name on Brown's first set of foreclosure pleadings, that Powell was making payments only in her capacity as Donovan's attorney. Powell encouraged this notion by making the payments from her business account, thereby fostering the idea that the payments were related to her law practice and not her personal finances. Annotations on Powell's checks even perpetuated Brown's misconception, as they were entitled "Donovan contract" and "March Donovan Apts." The trial court's distinction that the installments were not made from a *trust* account is inapposite when dealing with non-lawyers. Care must be taken by all attorneys to assure that their personal funds do not intermingle with the funds and property interests of a client, especial-

ly when it causes confusion (intended or otherwise) to third parties regarding the actual state of affairs. *See Matter of Discipline of Tidball,* 503 N.W.2d 850, 854 (S.D.1993).

[¶ 31.] This Court's recognition of Powell's payment of debts and utilities as illustrative of Powell's "open and notorious possession" is unpersuasive. The majority of these payments were not made until after the foreclosure action had been filed.[1] As mentioned above, no notice of the assignment was given to Brown and no purchase agreement or deed was filed. The insurance documents presented to Brown still contained Donovan's name as the insured. Powell's efforts to bring the property taxes and insurance up to date just before trial were simply too little, too late.

[¶ 32.] The Court's invocation of equity in this case is also misplaced.[2] Powell comes before this Court with unclean hands; she comes with the full knowledge of an attorney as to notice and the effects of South Dakota's recording statutes. One

---

1. The Court places great factual reliance upon its view that Brown's son "has long held a power of attorney to manage her affairs" and was well aware of Powell's interest in the property. This is error. Brown's son testified he did not obtain a power of attorney from his mother until "after this foreclosure action was commenced." Thus what Brown's son knew or did not know as to the status of the property prior to the foreclosure action is irrelevant.

   Beyond that, Brown's son testified he knew nothing of Powell's purported interest in the property:
   Q: Did Joan Powell inform you somehow that she purchased the property?
   A: No.
   Q: Has she ever in fact just written or called you and told you that she'd purchased the property?
   A: No.
   Q: Would you have found out about that essentially about the time the foreclosure, just before the foreclosure action was commenced?
   A: Yes.

   Q: So the date of the foreclosure action would be about the time you would have found out?
   A: That's correct.
   Q: Have either you or your mother ever consented to a transfer of the property or a waiver of what's called the due-on-sale clause in the contract?
   A: Absolutely not.

   * * *

   Q: And were you aware in any way that she was tendering those checks to you as a purchaser of the property herself?
   A: Absolutely not.

2. While this Court states that foreclosure is considered to be an equitable remedy, it is notable that the basis for prevailing in a foreclosure is clearly set forth by statute. A violation of the terms of the contract is a breach of contract constituting default. SDCL 21–50–1 provides that a remedy for default on a contract for deed is strict foreclosure. *See Wandler,* 1997 SD 98 at ¶ 20, 567 N.W.2d at 382.

who knowingly chooses not to file notice of a sale should not be allowed to benefit from that lack of notice, by claiming the other party's ignorance constituted a waiver of her rights.[3] Such surreptitious behavior is not favored by the law when exhibited by a layperson, much less an attorney. *See* South Dakota Rules of Professional Conduct 4.3 (stating "[w]hen a lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding."). Although Brown could have been easily notified, evidence of such notification is nonexistent.

[¶ 33.] Moreover, the property was sold by Brown to Donovan at less than fair market value to supplement his wages as her employee. It was also an incentive for him to remain in her employment. What equity is it to enforce that discount against a trusting 82–year–old invalid widow and grant it to an attorney whom Brown never hired or even knew?

[¶ 34.] Finally, Powell raises several issues that are not relevant to this foreclosure action. For example, the argument that this lawsuit was spawned from bad feelings over Donovan's acquittal is completely irrelevant to whether a valid waiver

exists in this case. Likewise, the evidence of Brown's previous acceptance of late payments from Donovan is also irrelevant. The pre-assignment acceptance of late payments is only germane to a determination of whether foreclosure against Donovan is justified for non-payment or late payment. Brown has amended her foreclosure action, however, and it is now based upon Donovan's breach of contract in assigning his rights to Powell without Brown's approval. Thus, the trial court's consideration of these facts in the context of deciding whether a valid waiver exists was clearly erroneous.

[¶ 35.] It would have been a simple matter for a law-trained person to send a one-paragraph notice of assignment to the contract vendor. It would have been a simple matter for a law-trained person to file the assignment of the contract for deed with the local register of deeds. It would have been a simple matter for a law-trained person to be candid with the court and initially raise her property interest in an answer when the property was facing foreclosure. Yet, none of this occurred. Equity should not be invoked to effectively nullify a nonassignment clause demanded by an 82–year–old woman for her protection. Instead of acknowledging the con-

---

**3.** Indeed, Powell's lack of disclosure went even further. On November 12, 1999, Brown filed a complaint for foreclosure of the contract for deed against Donovan based on his failure to timely make the required contractual payments, failure to properly insure the property, and failure to pay the property taxes. On December 9, 1999, Powell, acting as Jim Donovan's attorney, filed an answer on his behalf. But she made no mention of her claimed ownership of the property or interest therein. "Clearly, the requirement of candor towards the tribunal goes beyond simply telling a portion of the truth. It requires every attorney to be fully honest and forthright. '. . . Therefore, candor and fairness should characterize the conduct of an attorney at the begin-

ning, during and at the close of litigation.' " *In re Discipline of Wilka*, 2001 SD 148 ¶ 15, 638 N.W.2d 245, 249 (citations omitted). "Attorneys have a responsibility to present the record with accuracy and candor." *Matter of Discipline of Dorothy*, 2000 SD 23, ¶ 51, 605 N.W.2d 493, 509 (citing *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 833 (8thCir.1992)). Only later did Powell file a motion to intervene as a party defendant. This legal timidity is even more unusual as at basically the same time, Powell had not been bashful in resorting to the courts of this state in an attempt to vindicate her legal and factual claims in another matter. *See Marks v. Clark*, 2001 SD 122, 635 N.W.2d 278.

tracting parties' intent, this Court's opinion only rewards the less than forthright behavior of a member of the bar who presumably knew how and when to cross the "t's" and dot the "i's."

[¶ 36.]   For the above reasons, I would reverse and remand for further proceedings on the breach of contract and foreclosure action.

[¶ 37.]   GORS, Acting Justice, joins this dissent.